ELLEN SETTEE v. CHARLOTTE ELECTRIC RAILWAY COMPANY.

(Filed 3 May, 1916.)

**1. Evidence—Witness—Absent from State—Stenographer's Notes.**

The testimony of a witness, stenographically taken at a former trial, who is absent from the State under such circumstances that his return is merely contingent or conjectural, may be received as evidence on a subsequent trial of the same cause of action when its correctness is testified to by the official stenographer who took and transcribed it, and there is no suggestion that the record thereof was not full and entirely accurate. As to whether this will apply when the witness is temporarily absent, *quære*.

**2. Trials—Instructions—Interest—Appeal and Error—Harmless Error.**

In this action to recover damages for a personal injury the plaintiff attacks a release given to an agent of defendant for fraud, and the agent's testimony as to the transaction, in defendant's behalf, has been given and received after he had quit the defendant's service: *Held*, the reference by the court, in his charge to the jury, to the plaintiff's interest in the case was not prejudicial to the plaintiff.

**3. Evidence—Release—Fraud—Trials—Questions for Jury.**

Where a release is set up as a defense to an action to recover damages for a personal injury, it is properly admissible as evidence when its execution is shown, and when the question of fraud in its procurement is relied upon by the plaintiff it is for the jury to determine.

**4. Evidence—Fraud—Inducement—Appeal and Error.**

Fraud in the procurement of a release, relied upon as a defense in an action to recover damages for a personal injury, must have induced the execution of the release, or it will be harmless, and insufficient to invalidate it.

APPEAL by plaintiff from *Carter, J.,* at February Term, 1916, of MECKLENBURG.

The plaintiff brought this action to recover damages for personal injuries alleged to have been caused by defendant's negligence, which

consisted in permitting an iron frog to be left in a street of Charlotte. Plaintiff, while walking on the street, stepped on the frog and her foot was caught in the same and she was injured. The case was here at the last term, and plaintiff then was granted a new trial. 170 N. C., 365. At the last trial the jury returned the following verdict:

1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: "Yes."

2. Was the release set out in the answer secured by undue advantage and fraud, as alleged in the replication of the plaintiff? Answer: "No."

3. What damages, if any, is the plaintiff entitled to recover of defendant? (No answer.)

Defendant offered as evidence the examination of W. W. Rhodes, a witness who testified for the defendant at the former trial. It was taken down by a stenographer, who testified that it was a correct and literal reproduction of all that the witness said at the time. It appeared that W. W. Rhodes was in Arizona when this testimony was introduced, and had been there for nearly a year, he having gone there for his health. He had been an employee of the defendant, and was such at the time the alleged release of plaintiff was executed. He carried it to her home for her signature. "His salary, though, ceased at the time he left the service of the company." His testimony related exclusively to the signing of the release to the defendant by the plaintiff and what occurred at her home when it was signed. Plaintiff objected to the testimony, the objection was overruled, and plaintiff excepted. The typewritten examination was admitted and read to the jury. The objection was based on its incompetency, its relevancy being admitted. There were other exceptions taken by the appellant which will be considered in the opinion. Judgment was entered upon the verdict, and plaintiff appealed.

*J. W. Keerans* for plaintiff.
*Osborne, Cocke & Robinson* for defendant.

WALKER, J., after stating the case: The precise question involved in the admission of the proof as to the testimony of W. W. Rhodes, a witness for the defendant at the former trial of this case, has never before been considered by this Court. But it is thoroughly well settled, as it seems, by the great weight of authority and numerous precedents that evidence of the kind is admissible when the witness is absent from the State and not within the jurisdiction of the court. We need not decide as to whether a temporary absence will render the evidence competent, as in this case it appears that the witness is absent permanently, or, at least, for such a prolonged or indefinite period that

his return is merely contingent or conjectural. He may now fairly be considered as a nonresident in this State.

The rule in regard to such evidence which has generally been followed is thus stated in 1 Greenleaf on Evidence (16 Ed.), sec. 1639: "The death of the witness has always and as of course been considered as sufficient to allow the introduction of his testimony. The absence of the witness from the jurisdiction, out of the court's process, ought also to be sufficient, and is so treated by the great majority of courts." 5 Enc. of Ev., p. 904, says: "The absence of the witness from the State is a sufficient ground for admitting the testimony," citing in the notes many cases which support the text. The following authorities sustain the rule: Wigmore on Ev., sec. 1404; Stephens Digest of Evidence (1886), art. 32; Wharton on Ev., sec. 178; 1 Atkyns Rep. (1737), p. 444; *B. N. Natl. Bank v. Bradley,* 30 So., 546; *M. Mill Co. v. M. & S. R. Co.,* 51 Minn., 304; *Reichers v. Dammeier,* 45 Ind. App., 208; *Kolodvianski v. Am. L. Works,* 29 R. I., 127; *Gibson v. Patterson Mills,* 187 Pa. St., 513, and *A., T. & S. F. Ry. v. Baker,* 37 Okla., 48, where many of the cases are cited and reviewed. In *Minn. Mill Co. v. Minn. St. Ry. Co.,* 51 Minn., 304, the Court (by *Mitchell, J.*) quotes what is said by Starkie in his work on Evidence, as follows: "Starkie, in his work on Evidence (page 310), says the prevailing English rule is to admit the deposition of the witness, not only where it appears that he is dead, but in all cases where he is dead for all the purposes of evidence; as where he cannot be found after diligent search, or resides in a place beyond the jurisdiction of the court, or where he has become a lunatic or attainted." It is then said by the Court: "The admission of the testimony of a witness on a former trial is frequently inaccurately spoken of as an exception to the rule against the admission of hearsay evidence. The chief objections to hearsay evidence are the want of the sanction of an oath, and of any opportunity to cross-examine, neither of which applies to testimony given on a former trial. The real objection to such evidence is that it is only testimony of some one else as to what the witness swore to on the former trial; and before the day of official reporters in our trial courts the accuracy or completeness of such evidence depended entirely upon the fallible memory of those who heard the witness testify. It can be readily seen why, under such circumstances, courts were disinclined to admit such evidence except in cases of actual necessity. But where the words of a witness as they come from his lips are taken down in full by an official court stenographer, this objection does not apply. We do not see why such testimony is not as satisfactory and reliable as a new deposition, taken out of the State, would be. Rules on such subjects should be practical, and subject to modification as conditions change." And in *R. R. v. Osborne,* 64

Kan., 189, the reason for the rule is thus given: "The provision made by statute for the taking of depositions does not militate against this rule. Testimony taken down word for word at a former trial, and preserved as the law provides, is evidence of at least as high grade as a deposition. The testimony is taken in open court, in the presence of parties and witnesses, under the eye and supervision of the trial judge, where there is full opportunity to examine and cross-examine the witness, to search his motives, appeal to his conscience, and test his recollection and the accuracy of his statements. So taken, it must be as high order of testimony as a deposition taken upon interrogatories in the private office of a notary public, or other like officer, in some town or city remote from the one in which the trial is had." 10 Ruling Cases, sec. 143, after considering the question and citing the cases, thus states the result: "The text-books quite generally state broadly that the evidence of a witness given at a former trial or examination between the same parties may be introduced if the witness has since died, become insane or sick, and hence unable to testify, is out of the jurisdiction, or has been kept away from the trial by the opposite party. So far as civil actions are concerned, this is probably a sufficiently accurate statement of the general rule. All authorities agree that testimony given in a former action or at a former trial of the same action by a witness who has since died is admissible. It is also well settled that where a witness has been sworn or his deposition has been taken on a former trial and the witness has become insane, his testimony or deposition as previously given is admissible in evidence. And with equal uniformity it is held in civil cases that evidence taken at a former trial may be proved on a second trial of the same action if the witness has removed from the State or is otherwise beyond the jurisdiction of the court." These references to the authorities are sufficient to show the decided trend of the decisions, and there are many more cases which might be added to those we have selected, but it is unnecessary that we should do so, as they will be found readily in the text-books and in the other cases we have cited. They constitute a very large majority of the decisions upon this question. There was no suggestion here that the record of the evidence was not full and entirely accurate. It appears, on the contrary, that the witness's testimony was transcribed to the paper, word for word, and the testimony itself is of such a nature as to show most conclusively that there was nothing material left out that the witness could have said. The examination was both searching and exhaustive. Nor was there any intimation that the witness had been kept away or induced not to attend the court by any act or conduct of the defendant. If a deposition had been taken and read, instead of this proof, we do not see how the plaintiff would have been benefited in the least. *Smith*

*v. Moore,* 149 N. C., 185, has no bearing on this case. The witness in that case was merely sick, the nature of the malady and its probable duration not appearing, and she was also in the State and within reach of the court's process. Nor is *Dupree v. Ins. Co.,* 92 N. C., 424, any more applicable. The evidence as to what the witness had testified at a former trial was excluded for a reason very different from the one assigned here for the objection to Rhodes' former testimony. This will clearly appear when *Dupree's case* is read in connection with *Gadsby v. Dyer,* 91 N. C., 311, cited therein. This is plaintiff's main exception, and, therefore, we have considered it at some length, and, further, it is a comparatively new question in this State.

We are of the opinion that the judge's reference to the interest of the plaintiff in the cause, as something that should induce them to weigh his testimony cautiously, was not calculated to prejudice the plaintiff, under the facts and circumstances of the case. Besides, it was shown that Rhodes had quit the service of the defendant at the time he testified, and had no interest whatever in the result of the litigation. It may also be added that the charge of the court on the question of interest was rather more favorable to the plaintiff than the strict rule of the law would permit, and it surely worked no harm. She has no just cause to complain.

The execution of the release having been shown, the court properly admitted it in evidence. This did not prevent the plaintiff from attacking it as fraudulent. The judge should not, as he could not, have told the jury that the release was fraudulent and void as matter of law. The parties did not agree as to the amount of damages, nor did they plainly appear. This was a disputed matter. The plaintiff claimed large damages, and the defendant asserted that the injury was slight and the damages small. The court could not take the case from the jury where the facts were disputed. But the objection was to the introduction of the release, and this was properly overruled after the execution of the release had been shown. Its introduction was proper, as part of the evidence, even if it was fraudulently obtained.

The court was right in charging the jury that the fraud, if any, must have induced the execution of the release by the plaintiff, otherwise the fraud, if practiced upon the plaintiff, would have been harmless. It would seem that this exception is based upon a misconception of the particular nature of the instruction given by the court, which related to the operation or effect of the alleged fraudulent conduct upon the mind and will of the plaintiff. The charge of the court, as to what constituted fraud, was based upon special prayers of the plaintiff, as it seems, and given in accordance therewith. It was, anyhow, sufficiently full and explicit, and the jury must have understood

what was meant, and what was necessary for them to find in order to invalidate the paper.

Having carefully examined the record, we find no ground for a reversal.

No error.