Defendants, Robert Maynard and Walter McGehee, with two others, Guy Barnes and Raymond Taylor, were indicted for felonious breaking into the store of the prosecutors, A. J. and C. S. Smith, with intent to steal, etc. Second, for stealing a number of articles from said storehouse, and with a count in the bill for receiving the articles knowing that they were so stolen, etc. Guy Barnes having made his escape from prison, and being at the time a fugitive from justice, and Raymond Taylor being absent, the first named defendants only were on trial.
There was evidence on the part of the State tending to show that on the night of 22 March, 1922, the store of the prosecutors was broken into and several articles of the property described in the bill stolen therefrom, and that the four defendants named in the bill were guilty parties. It further appeared that in May, 1922, at a preliminary trial before the recorder's court, defendants being present, Guy Barnes having been duly sworn, testified as a witness, defendants Maynard and McGehee being present, and that personally and by counsel said Barnes was cross-examined in behalf of the defendants now on trial. That said Barnes gave in detail the doings of the four defendants named, on the night the store was robbed, stating, among other things, that the four were in *Page 655 
McGehee's car, and went to one Manning's, where they procured an acetylene torch and some cutting points, two of them saying it was their intent to rob the bank, but being persuaded from this enterprise by Barnes on the ground that it was beyond their skill and intelligence, they rode in the car to several points in the county, and finally, about four a. m. they broke into the store of the prosecutors, and several articles were stolen. There was much other evidence tending to support the account of the witness Barnes, identifying the car and the defendants, who were met at different places during the night, and that the occupants of this car were the persons who committed the robbery. It was shown that this testimony of Barnes was given under oath after he had been duly warned of his rights, and that defendants now on trial had subjected him to cross-examination. That the said evidence was taken down by a stenographer, who was first duly sworn, and who had preserved his notes and transcribed same. It appeared that at the close of the preliminary hearing before the recorder, the defendants were bound over to Superior Court, the two defendants on trial giving bond, and Barnes being committed to jail.
There was evidence offered on a preliminary inquiry to the effect that some time before the trial Barnes had escaped from custody and was now a fugitive from justice, and that this escape had been brought about by the aid and procurement of the defendants now on trial, and on hearing the evidence, the court so found. The State then introduced the stenographer, who, after being duly sworn, testified that he took the stenographic notes of Barnes' evidence on the preliminary investigation; that same was taken correctly, and had been accurately transcribed by him, and he had the notes with him, and by the aid of the notes he could give the testimony of Barnes as delivered on the preliminary hearing.
The court having found, as stated, on a preliminary inquiry, that the escape and absence of Barnes was by the aid and procurement of present defendants, allowed the stenographer to state to the jury the evidence of Barnes before the recorder, to which ruling defendants excepted. In connection with this ruling, the stenographer further stated that his notes of the evidence were not read over to Barnes, nor signed by him at the close of his evidence, nor was a copy of same filed with the clerk.
In apt time, defendants, in writing, asked the court to charge the jury as follows: "It is a principle of law that persons charged with the commission of crime are entitled to be confronted by the witnesses, who shall be examined in the presence of the jury and the parties. This prosecution depends largely upon the testimony of Guy Barnes given before the recorder of Vance County, given upon the preliminary hearing of this case, as stated by the witness Oliver. This testimony is not admissible, and ought not to be considered by you against the defendant, *Page 656 
unless it shall appear to you from the evidence that Barnes is absent by the inducement or other act of the defendant." Prayer refused, and defendants excepted.
There was verdict of guilty against both defendants, judgment, and defendant Maynard excepted and appealed.
Defendant Maynard, who alone appeals, objects to the validity of this conviction on account, chiefly, of the admission of the testimony of the stenographer by which the evidence of the accomplice, Barnes, was placed before the jury, and on the ground: (1) that he was not properly confronted with the accusing witnesses; (2) that the evidence of said witness was not completed, attested, or filed as required by the statute in order to a proper reception of such evidence.
In regard to the first position, it is a recognized principle of trials at common law that where, in a judicial proceedings before a court having power to compel the attendance of witnesses, administer oaths, and hear evidence pertinent to the inquiry, a witness has given his evidence and the defendants are present and have the right and have been afforded opportunity to cross-examine the witness, such testimony, when properly attested and verified, may be introduced and used on a second trial of the cause against said defendants, where the witness is since dead, or has become hopelessly or permanently insane, or is wrongfully absent from the trial by the acts and procurement of the defendants. And by the weight of authority when the witness has departed from the jurisdiction of the court and become permanently a nonresident. S. v. Bridgers, 87 N.C. 562; S. v.Thomas, 64 N.C. 75; S. v. Valentine, 29 N.C. 225; Mattox v. U.S.,156 U.S. 237-242-244; Reynolds v. U.S., 98 U.S. 145; People v. Elliott,172 N.Y. 146; Commonwealth v. Richards, 35 Mass. 434; State v. JohnNelson, 68 Kansas, 556; Trial of Lord Morley, 6 Howell State Trials, 770.
These authorities proceed upon the principle fully approved with us that in the cases specified, the right and privilege of a defendant in a criminal case to confront the accuser and his witnesses, as contained in Art. I, sec. 11, of our Constitution, is fully accorded by the opportunity given to meet and cross-examine them at the former trial, and that the position referred to in no way offends against the constitutional guarantee.
As to the second ground of this objection, our legislation as to these preliminary examinations appearing in C. S., ch. 83, art. 1, sec. 4560, *Page 657 
provides that "the evidence given by the several witnesses examined shall be reduced to writing by the magistrate, or under his direction, and shall be signed by the witnesses respectively, etc.," and in section 4563: "That the answers of a prisoner shall be reduced to writing. They shall be read to the prisoner, who may correct or add to them, and when made conformable to what he declares is the truth, they shall be certified and signed by the magistrate." And in section 4572: "That all examinations had pursuant to the provisions of this chapter shall be certified by the magistrate, taking the same to the court at which the witnesses are bound to appear, within twenty days after taking of the same, etc., and the examinations taken and subscribed as herein prescribed may be used as evidence before the grand jury, and on the trial of the accused, provided he was present at the taking thereof, and had opportunity to hear the same and to cross-examine deposing witnesses, and if such witness be dead or so ill as not to be able to travel, or by procurement or connivance of the defendant has removed from the State, or is of unsound mind."
It will be noted that this examination was never either subscribed or certified, nor was it read over to the witness Barnes or approved by him, said Barnes being then a defendant, and we concur in the view of defendant's counsel that the stenographer's notes do not comply or come within the provisions of the statute. But a proper perusal of this legislation will disclose that the same is in extension of the common-law principle which we are considering, that its purpose was to make these preliminary examinations, when properly taken, certified, and filed, in the nature of an official record, to be read in evidence on mere identification, and that it does not and was not intended to restrict or trench upon the common-law principle that evidence of this kind, when repeated by a witness under a proper oath, and who can and does swear that his statements contain the substance of the testimony as given by the dead or absent witness, shall be received in evidence on the second trial. And well considered authority is to the effect that stenographers' notes, when the stenographer who took them goes on the stand and swears that they are accurate and correctly portray the evidence as given by the witness, come well within the principle.
Speaking to this question, in the case of Mattox v. U.S., supra, at p. 244, Associate Justice Brown said: "That all the authorities hold that a copy of stenographic report of his entire former testimony, supported by the oath of the stenographer that it is a correct transcript of his notes and of the testimony of the deceased witness, is competent evidence of what he said." And the principle is approved by us in Settee v. R. R.,171 N.C. 440. In that case it was held, among other things, as follows: "The testimony of a witness, stenographically taken *Page 658 
at a former trial, who is absent from the State under such circumstances that his return is merely contingent or conjectural, may be received as evidence on a subsequent trial of the same cause of action when its correctness is testified to by the official stenographer who took and transscribed [transcribed] it, and there is no suggestion that the record thereof was not full and entirely accurate. As to whether this will apply when the witness is temporarily absent, quaere."
Defendant excepts further to the refusal of the court to give his special prayer for instructions, but such an objection cannot for a moment be sustained. The prayer, as shown above, embodies the proposition, in effect, that although the court on a preliminary hearing and with ample evidence in support of the position had found that the witness Barnes was absent by procurement of the defendant, that the evidence of the witness is inadmissible, and should not be considered by the jury, unless they should find from the evidence that Barnes is absent by the inducement or other act of defendant. And all the authorities on the subject so far as examined are to the effect that this question of admitting the evidence and the pertinent findings preliminary thereto, are for the courts and not for the jury; that they are referred primarily to the sound discretion of the trial judge, and his action thereon will not be disturbed on exception or appeal unless there has been manifest abuse of such discretion. Reynolds v. U.S., p. 145, supra; State v. Wiggins, 50 La. Ann., 330; People v. BrunoLewandowski, 143 Cal. 574; Rex v. Stephenson, 9th Cox Cr. App., 156.
In the Reynolds case, supra, Chief Justice Waite, speaking to the question, said: "Such being the rule, the question becomes practically one of fact, to be settled as a preliminary to the admission of secondary evidence. In this respect it is like the preliminary question of the proof of loss of a written instrument before secondary evidence of the contents of the instrument can be admitted. In Lord Morley's case, supra, it would seem to have been considered a question for the trial court alone, and not subject to review on error or appeal; but without deeming it necessary in this case to go so far as that, we have no hesitation in saying that the finding of the court below is at least to have the effect of the verdict of a jury upon a question of fact, and should not be disturbed unless the error is manifest." The objection, therefore, is overruled.
Again, on the trial, one of the prosecutor's witnesses had testified that McGehee, at the preliminary trial in Henderson, had made the statement and sworn to it that he, McGehee, had been in the front of the store that was broken into, and counsel for appellant requested the court to instruct the jury that the statement made by McGehee could not be considered as against Maynard. The court gave the instruction with the qualification "unless the circumstances go to show that they were together that night." *Page 659 
This statement of the witness, as it appears in the record, is so indefinite, giving neither time nor circumstance, that the statement itself, and anything that concerns it, might well be disregarded — but conceding that the statement referred to such time as would make it a pertinent circumstance, the entire evidence tended to show that the parties, McGehee and Maynard, were together that night, seen at different places, and evidently engaged in a common purpose in which Maynard appeared to be a leader, and McGehee running the car they were using, his own car. The car that had been at the store was very well identified by the peculiarity of the marks made by two of its wheels on the ground. It was tracked into the Perry plantation, and in the early forenoon after the robbery, coming out of the Perry plantation, at a point where it had stalled, and both of the present defendants trying to get it up a hill. And this qualification of his Honor, even if technically erroneous, was of such slight significance that it could have had no appreciable effect on the verdict, and should not be held for reversible error. In Powell v. R. R.,178 N.C. 243-248, the Court, in reference to some immaterial objection, said: "This cause requiring much time and work, has been fully and carefully tried with the assistance of competent, alert, and diligent counsel on both sides, the determinative issues have been fairly decided, and the result of the hearing should not be disturbed unless it appears that appellant's defense has been in some way prejudiced." And further: "In a well considered opinion by Associate Justice Walker, in Brewer v. Ring,177 N.C. 476, it was said, `Courts do not lightly grant reversals or set aside verdicts on grounds which show the alleged error to be harmless, or where the appellant could have sustained no injury from it. There should be something like a practical treatment of a motion to reverse, and it should not be granted except to subserve the ends of substantial justice,' citing Hilliard on New Trials (2 ed.), secs. 1-7."
On careful consideration, we are of opinion that no reversible error appears in the record, and the judgment of the trial court is affirmed.
 No error. *Page 660