STATE v. HERMAN CASEY.

(Filed 22 March, 1933.)

1. **Criminal Law G m—Admission of transcript of former trial held not error under facts of this case.**

Where a defendant in a criminal action is granted a new trial for newly discovered evidence, and a witness at the former trial has died, the admission of the transcript of his testimony at the former trial will not be held for error where the court stenographer who had transcribed the evidence at the former trial has testified under oath that the transcript was substantially correct and contained all the answers of the witness at the former trial.

**2. Criminal Law G t—Where contents of writing is collateral to the main fact sought to be proven, parol evidence thereof is competent.**

Where in a criminal prosecution the fact that one corporation had bought out another corporation becomes relevant and material, there being evidence that defendant had made threats against the employees of one of them as a class, it is not required that such connection be shown by the written instruments, but parol evidence thereof is competent, the matter being collateral.

**3. Homicide G d—Evidence of threats against class to which deceased belonged held competent to show malice, motive, etc.**

In a prosecution for homicide, evidence that defendant had made threats against a class of persons generally, in which class the deceased was included, in this case the employees of a certain corporation, is held competent to show malice, motive, premeditation and deliberation.

APPEAL by defendant from *Cranmer, J.,* and a jury, at October Special Term, 1932, of LENOIR. No error.

At September Term, 1930, of Lenoir Superior Court, the defendant, Herman Casey, was tried upon a bill of indictment charging him with murder in the first degree of James C. Causey. A verdict of guilty of murder in the first degree on the bill of indictment was returned by the jury, and the defendant was thereupon sentenced by the court below to death by electrocution. The defendant appealed to this Court and no error was found in the trial in the court below. *S. v. Casey,* 201 N. C., 185.

At August Term, 1931, of Lenoir Superior Court, a motion by the defendant for a new trial was made on the grounds of disqualification of certain jurors by reason of alleged fraud and prejudice, and for newly discovered evidence. This motion was made in the Superior Court at the next succeeding term following affirmance of judgment on appeal to this Court. This motion was refused by the court below and on appeal to this Court "error and remanded." *S. v. Casey,* 201 N. C., 620. Later a new trial was awarded defendant by the court below and he was tried at October Special Term, 1932, Lenoir Superior Court. The verdict was "not guilty of murder in the first degree, but is guilty of murder in the second degree and beg the mercy of the court." The judgment of the court below is: "Let the defendant be confined in the State prison at hard labor for an indeterminate sentence of not less than twenty-five nor more than thirty years."

The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be considered in the opinion.

*Attorney-General Brummitt and Assistant Attorneys-General Seawell and Siler for the State.*

*Shaw & Jones and W. C. Douglass for the defendant.*

CLARKSON, J. The defendant's counsel in his argument of this cau.e well says that if there is error in the record on this appeal it is immaterial how often the defendant has been tried—he is entitled to a trial according to law.

On the first appeal of defendant (201 N. C., 185), it being a case involving life and death, this Court went into the case thoroughly, setting forth the material facts in detail and discussing fully the questions of law involved. The facts in the present case are practically the same as in the former case. The eye witness to the killing again testified in substance to what he had testified to on the former trial, and the testimony corroborating this witness did not vary to any extent. On the present trial there was more evidence of corroboration and contradiction.

The defendant contends that on the first trial this case was tried "upon the theory that there was a controversy between Casey and the Atlas Plywood Corporation, which had merged with the Utility Manufacturing Company, and that Casey killed Causey, who was the man who came in the woods and stopped him from cutting timber and that the Atlas Plywood Corporation was the company holding up the payment of the check." The evidence on the present record, which was admitted as competent, we think is susceptible of the same construction. Broadly there was a controversy between John H. Sutton, Sr., and the Utility Manufacturing Company. The action was to determine the ownership of the land in dispute, upon which defendant and his employees had cut certain timber off of this land and the payment held up.

E. H. Graham, who has died since the last trial, testified in part, on the former trial: "Prior to 3 July, 1930, I lived in Goldsboro, N. C., and was connected with Utility Manufacturing Company, in 1929, up until October, at which time Utility Manufacturing Company was bought by Atlas Plywood Corporation, and after 1 October, 1929, I was manager of Atlas Plywood Corporation; I knew Mr. J. C. Causey and he was also employed by the company. He was in charge of the logging operations. He has been with the company since 15 September, 1929. . . . Mr. Causey drove a Hudson coach, and it belonged to the Atlas Plywood Corporation. . . . I know Mr. Herman Casey; he has been in the office at Goldsboro on a number of occasions. The last time he was in the office to my knowledge was the latter part of May or first of June. He came over there to see about some money that had been withheld at Goldsboro Lumber Company. He did make a statement in reference to it. . . . Q. What was it? (Defendant objects unless it refers to Mr. Casey.) He said 'I am going to have my money, somebody is going to pay me.' (Defendant objects to answer and asks that it be stricken out; overruled; defendant excepts.) I did refuse to pay him the money and did not permit him to be paid. . . . (Court

questions.) Mr. Casey was in the office the latter part of May or first of June to see about some money that was being held back. Mr. Casey knew who was holding up the money. I explained to him it was held up by my company. I don't know whether Mr. Casey knew Mr. Causey or not. As I recall it, I told Mr. Casey that Mr. Causey had charge of the logging operations. I had quite a conversation with Mr. Casey, 10 or 15 minutes. I had known him several years and we talked about logging in general. (Re-cross.) Yes, sir, I am positive that I told Mr. Casey of Mr. Causey's relations to the company, because Mr. Casey asked if we had any logging operations that we could put him on and I told him he would have to see Mr. Causey, that he had charge of the logging operations."

Mrs. G. C. Andrews on the present trial testified, in part, that she was court reporter at the former trial of the defendant: (Court.) "Q. Is your transcript substantially correct, Mrs. Andrews? Yes, sir, I say it is. My transcript is a full and complete transcript of the *direct and cross-examination.* I might say that the evidence is written in narrative form and that all questions do not appear, but the answers are all in there. *Everything stated by the witness Graham is in this transcript."* The defendant excepted and assigned error. We think the evidence competent.

Speaking to this question in the case of *Mattox v. U. S.,* 156 U. S., at p. 244, *Associate Justice Brown* said: "That all the authorities hold that a copy of stenographic report of his entire former testimony, supported by the oath of the stenographer that it is a correct transcript of his notes and of the testimony of the deceased witness, is competent evidence of what he said." And the principle is approved by us in *Settee v. R. R.,* 171 N. C., 440. *S. v. Maynard,* 184 N. C., at p. 657; *S. v. Levy,* 187 N. C., 588. We think the testimony of the court reporter comes within the rule.

Other evidence than that of Graham as to threats was introduced on this and the former trial of this case. For example, on the present record, the testimony of S. L. Brown, was in part: "He (defendant) was hauling stave blocks there first time I ever saw him to know him, sometime during the year 1930. . . . Yes, sir, the defendant, Herman Casey made a statement to me. Q. What was it? A. He said that they had held up the payment on his blocks, and that he made two trips to Goldsboro to see Mr. Graham and he would not give him any satisfaction about it. Q. What else did he say? A. He said he was going to shoot hell out of some of them if they did not pay him." Defendant excepted and assigned error, and for the reason also that there was no production of the writing—the best evidence—was to the two corporations being connected, and contended that therefore the threats should have been excluded. We cannot so hold.

---

In *S. v. Ferguson*, 107 N. C., at p. 847, is the following: "We do not think the note in question comes within the general rule excluding parol evidence of the contents of written instruments, and the evidence should have been admitted. *S. v. Credle*, 91 N. C., 648; *S. v. Wilkerson*, 98 N. C., 696; 1 Greenleaf Ev., sec. 89 and cases cited."

When the contents of a writing come collaterally in question, such writing need not be produced, but parol evidence as to its contents will be received. *Pollock v. Wilcox*, 68 N. C., 47; *Carden v. McConnell*, 116 N. C., 875; *Ledford v. Emerson*, 138 N. C., 502; *Hall v. Griessell*, 179 N. C., 657; *Miles v. Walker*, 179 N. C., 479; Wigmore on Evidence, 2d ed., sec. 1253.

This very matter of class threats was held competent in the former trial. 201 N. C., at p. 206. 30 C. J., part sec. 417(2), at p. 190. Sec. 418: "Threats made by defendant against a class to which deceased belonged, and prima facie referable to deceased, although his name is not mentioned, are admissible against defendant," etc. *S. v. Mills*, 91 N. C., 596; *S. v. Hunt*, 128 N. C., 584. Lockhart on Ev., 2d ed. part sec. 147, is as follows: "And general threats are admissible to show malice, motive, premeditation, conspiracy and the like."

We see no error in the charge taken as a whole. The jury was merciful in its verdict. No doubt the sympathy arose from the anger engendered in defendant against one whom he took as connected with the wrong done him—suddenly meeting him in the woods. The dead man seems to have been the victim without provocation on his part.

The matter was largely one of fact for the jury to determine. On the entire record we see no prejudicial or reversible error.

No error.