STATE OF NORTH CAROLINA v. DAVID BENJAMIN SMITH (ALIAS DAVID BENJAMIN McCULLOUGH) AND BOBBY ORLANDO FOSTER

No. 157

(Filed 31 January 1977)

1. Homicide § 21— first degree murder of motel employees — sufficiency of evidence

The State's evidence was sufficient for the jury in a prosecution of two defendants for the first degree murders of two motel employees where it tended to show that the bodies of a motel security guard and a manager-trainee were found on the floor of the motel office at 2:45 a.m.; each had been shot several times; the security guard was dead and the manager-trainee died shortly thereafter; $200 from the cash register and the security guard's .32 caliber pistol were missing; a .25 caliber bullet was recovered from the manager-trainee's body and .32 caliber bullets were recovered from both bodies; the .32 caliber bullet recovered from the manager-trainee's body was fired from the security guard's pistol; sometime after 12:30 a.m. on the night of the crimes defendants and a female companion went to the motel; the female companion remained in the car while defendants entered the motel; while defendants were gone, their companion heard two or more sounds like a "blowout or a car backfiring"; defendants went to New York City the next night; a witness saw the security guard's pistol in the possession of one defendant the next night and later saw the pistol in defendants' car on the way to New York; and a New Jersey State Trooper later found the security guard's missing pistol in a car occupied by defendants.

State v. Smith

**2. Criminal Law § 104— nonsuit — contradictions in State's evidence**

Contradictions and discrepancies in the State's evidence are matters for the jury and do not warrant nonsuit.

**3. Criminal Law § 87— refreshing recollection of witness**

Under the doctrine of "present recollection refreshed," the witness has a sufficiently clear recollection so that if allowed merely to refresh or stimulate it, he will be able to testify accurately to the controverted facts; thus, the witness finally testifies from his own recollection, and he uses writings, memoranda and other aids for the sole purpose of "jogging" his memory.

**4. Criminal Law § 87— refreshing recollection of witness — preparation of aid**

It is not required that an aid for refreshing the recollection of a witness be prepared by the witness himself or be prepared contemporaneously, or nearly so, with the event.

**5. Criminal Law § 87— refreshing recollection of witness — use of transcript prior to trial**

Use of a transcript to refresh the memory of a witness *prior* to trial was proper.

**6. Criminal Law § 87— present recollection refreshed — admissibility — credibility**

Where the testimony of a witness purports to be from his refreshed memory but is clearly a recitation of the refreshing memorandum, such testimony is not admissible as present recollection refreshed and should be excluded by the trial judge; however, where there is doubt as to whether the witness purporting to have a refreshed recollection is indeed testifying from his own recollection, the use of such testimony is dependent upon the credibility of the witness and is a question for the jury.

**7. Criminal Law § 87— refreshing memory — transcript of prior testimony — source of testimony**

Where a witness who "refreshed" her memory by looking at a transcript of her testimony at a previous trial stated at one point that the origin of her testimony was "of my own memory" and at another point that "some is to my memory and some isn't," the trial court did not abuse its discretion in refusing to strike the testimony of the witness and in submitting it to the jury for consideration.

**8. Criminal Law § 92— joint trial for murder**

Consolidation for trial of charges against defendants for murder of two motel employees during a robbery was not rendered improper because evidence of one defendant's visit to the motel three days prior to the crime would not have been admissible against the second defendant in a separate trial or because the second defendant offered no evidence and yet was denied the last argument to the jury.

State v. Smith

9. **Criminal Law § 92— consolidation of charges for trial**

Consolidation for trial is generally proper where the offenses charged are of the same class and are so connected in time and place that evidence at trial upon one indictment is competent and admissible on the other.

10. **Criminal Law § 92— joint trial — discretion of court**

Absent a showing that a joint trial has deprived an accused of a fair trial, the exercise of the court's discretion will not be disturbed on appeal.

11. **Criminal Law § 87— leading questions**

The trial court has discretionary authority to permit leading questions in proper instances, and unless prejudice is shown the discretionary action of the trial court will not be disturbed.

12. **Criminal Law § 89— exclusion of impeachment question**

The trial court did not err in sustaining the State's objection to defendants' inquiry on cross-examination of a State's witness as to the date the witness had been convicted of an unrelated larceny where the witness's memory for dates was adequately impeached by his later testimony and the excluded question was merely cumulative.

13. **Criminal Law §§ 88, 128— cross-examination of defendant — good faith question**

The State's question to defendant on cross-examination as to whether a codefendant told defendant, "You didn't have to shoot him," and whether defendant replied, "If I hadn't shot him, he would have shot one of us. He had a gun," was not posed in bad faith, and the court did not err in failing to declare a mistrial because of the question, where the record shows that, based on an extra-judicial statement of a third person, the State had good reason to believe that defendants made the statements embraced in the question.

14. **Criminal Law § 162— ruling upon objection**

When an objection is made the judge should rule upon it prior to the close of the proponent's case.

15. **Criminal Law § 99— failure to rule upon objections — expression of opinion**

Sustained and systematic failure to rule upon objections may indicate an opinion by the trial judge in violation of G.S. 1-180.

16. **Criminal Law §§ 99, 162— failure to rule upon objection — absence of prejudice**

Defendants were not prejudiced by the failure of the trial court on one occasion to rule on an objection during the State's cross-examination of one defendant where the question objected to was proper and nothing suggests an opinion by the court in violation of G.S. 1-180.

State v. Smith

**17. Criminal Law § 102— jury argument not impeachment of witness and defendants**

In this prosecution for two murders committed during a robbery, the district attorney's argument that "The State had to put [a named witness] up. He's a friend of the defendants. He's the kind of person they run around with," did not improperly attempt to impeach both the character of a State's witness and the character of defendants themselves where the record shows that it was the defense on cross-examination who elicited evidence of bad character tending to impeach the witness and that the statement of the district attorney was essentially true.

**18. Bill of Discovery § 6— criminal cases — names of State's witnesses**

No right of discovery in criminal cases existed at common law, and neither former G.S. 15-155.4 nor G.S. 15A-903 requires the State to furnish the accused with a list of witnesses who are to testify against him.

**19. Bill of Discovery § 6; Criminal Law § 87— witnesses not on list furnished defendants**

The trial court did not err in permitting two witnesses to give corroborating testimony for the State when their names were not on the list of twenty-one witnesses furnished by the district attorney to defense counsel pursuant to pretrial discovery since the State substantially complied with the court's order to furnish the names and addresses of witnesses, bad faith by the omission of the names was not shown, and defendant suffered no prejudice as a result of the admission of the challenged testimony.

**20. Criminal Law § 40— use of previously recorded testimony**

The use of previously recorded testimony is authorized if it be shown that: (1) the witness is unavailable; (2) the proceedings at which the testimony was given was a former trial of the same cause, or a preliminary stage of the same cause, or the trial of another cause involving the issue and subject matter at which the testimony is directed; and (3) the current defendants were present at that time and represented by counsel.

**21. Criminal Law § 40— use of previously recorded testimony — unavailability of witness**

A witness was unavailable within the meaning of that requirement for the admission of previously recorded testimony where the witness lived in Florida, was 70 years old, had just had surgery for a breast tumor and an injured foot, and his doctor certified that travel would be detrimental to his health.

**22. Criminal Law § 57; Homicide § 20— admissibility of pistol — chain of custody not shown**

The evidence in a homicide case was sufficient to identify a .32 caliber pistol and to establish its competency, and the pistol was properly admitted in evidence without the State having shown a chain of custody, where a New Jersey State Trooper testified he seized a

State v. Smith

pistol when he arrested defendants and recorded the serial and model numbers of the gun in a written report, these recorded numbers corresponded to the serial and model numbers on a gun sold to the victim and on the gun admitted in evidence, and adequate testimony established that ballistics tests performed by State's witnesses were run on the pistol admitted in evidence.

23. **Constitutional Law § 29; Jury § 7— use of peremptory challenges — alleged exclusion of blacks from jury**

There is no merit in defendants' contention that they were denied a representative jury by the State's impermissible use of its peremptory challenges to exclude blacks from the jury since the peremptory challenge permits rejection for a real or imagined partiality, and an examination of the prosecutor's reasons for the exercise of his challenges in any given case is not permitted.

24. **Constitutional Law § 29; Jury § 7— exclusion of jurors for death penalty views — representative jury**

Defendants in a first degree murder case were not denied a representative jury by the exclusion of certain jurors who stated on *voir dire* that they could not convict defendants because the conviction would result in a judgment of death, although the death penalty is now unconstitutional.

25. **Jury § 7— excusal of jurors for death penalty views — no interrogation by defense**

The trial court properly excused for cause each venireman who made it clear that he could not, under any circumstances, return a verdict of guilty knowing that the mandatory death penalty would be imposed without first giving defendants a chance to "rehabilitate" the venireman by further interrogation.

26. **Jury § 5— additional jurors summoned by officer**

Defendants have no cause for complaint that two jurors were chosen from additional talismen summoned by an officer when the regularly summoned venire was exhausted where defendants examined and passed the jurors and failed to exhaust their peremptory challenges.

27. **Criminal Law § 127— motion in arrest of judgment**

Defendants' motion in arrest of judgment was properly denied because the indictments are proper and no fatal defect appears on the face of the record.

28. **Criminal Law § 163— question concerning charge not presented**

No question concerning the charge to the jury was presented where no portion of the charge was specified as erroneous and no reasons, arguments or citations of authority were contained in the brief as required by Rules 10 and 28, Rules of Appellate Procedure.

29. **Constitutional Law § 36; Homicide § 31— substitution of life imprisonment for death penalty**

Sentences of life imprisonment are substituted for death penalties imposed by the trial court in these first degree murder cases.

DEFENDANTS appeal from judgments of *Thornburg, J.,* 10 May 1976 Session, MECKLENBURG Superior Court.

The first trial of these defendants on 30 September 1974 resulted in a mistrial. At their second trial, commencing 11 November 1975, defendants were convicted of first degree murder and sentenced to death. They appealed and were awarded a new trial. See *State v. Smith,* 289 N.C. 143, 221 S.E. 2d 247 (1976).

On 10 May 1976 defendants were again placed on trial. In Case No. 74-CR-1598, defendant David Benjamin Smith, alias David Benjamin McCullough, is charged with the murder of Arthur William Hawkins, and in Case No. 74-CR-1599, said defendant is charged with the murder of Norman Bruce Wagstaff. In Case No. 74-CR-1600, defendant Bobby Orlando Foster is charged with the murder of Norman Bruce Wagstaff, and in Case No. 74-CR-1601, this defendant is charged with the murder of Arthur William Hawkins.

All four bills of indictment allege that the murders occurred in Mecklenburg County on 11 August 1973. The four cases were consolidated for trial.

The State's evidence tends to show that on 15 September 1965 Arthur William Hawkins purchased a .32 caliber Burgo, Model 108 pistol, serial number 112195, from Fox Jewelry and Loan in Jacksonville, Florida. He was employed as a security guard by the Days Inn Motel on Tuckaseegee Road in Charlotte, North Carolina, for about a year prior to his death on 11 August 1973. Norman Bruce Wagstaff was employed at the Days Inn Motel on Tuckaseegee Road as a manager-trainee.

On Friday evening, 10 August 1973, and into the early morning hours of Saturday, 11 August 1973, Arthur William Hawkins and Norman Bruce Wagstaff were on duty and Hawkins had his .32 caliber Burgo pistol in his possession. There was $200 in cash in the cash register. These two employees were alone when last seen around 1 a.m. on the morning of 11 August 1973.

On this same evening, Belinda Harris went to a night spot called the "Right On Lounge" or "Howard's Grill" with her sister and another female companion. Around 12:30 a.m. on the morning of 11 August 1973, she met defendants Smith and Foster in the parking lot at this night spot. She and her sister

accompanied defendants in a black 98 Oldsmobile driven by Foster to another establishment known as "Bill's." Belinda's sister left the party at that point, and Belinda and the two defendants rode around awhile. Smith left the car and Belinda and Foster "drove on a short time" and then met Smith, who was driving a "rather raggely car." Foster and Belinda got into this car with Smith and they went to the Days Inn Motel on Tuckaseegee Road in the "raggely car," ostensibly to pick up a girl. Smith and Foster left Belinda Harris in the car while they entered the motel. While they were gone she heard two or more sounds "like either a blowout or a car backfire." They returned to the "raggely car" shortly thereafter and left the premises. They drove to some point on a major highway with a grass median where all three of them left the "raggely car," walked across the grass median and entered the black 98 Oldsmobile parked there, headed in the opposite direction. They drove to the home of Belinda Harris' mother, picked up Belinda's brother Henry Harris (also known as Henry Peterson), went to an eating establishment and returned around 5 a.m.

About 2:45 a.m. on the morning of 11 August 1973, the bodies of Hawkins and Wagstaff were discovered on the floor behind the counter in the office of the Days Inn Motel on Tuckaseegee Road. Hawkins was dead and Wagstaff died shortly thereafter. Each had been shot several times. Hawkins had no wallet and his .32 caliber Burgo was missing from his holster. The office had been ransacked, chairs turned over, drawers pulled out, papers scattered, a telephone off the hook, the telephone switchboard torn out of the wall, all of the cash missing, and spatters of blood at various places. Three bullets were recovered from the victims: a .32 caliber bullet from Hawkins' body, a .25 caliber bullet from Wagstaff's head and a .32 caliber bullet from Wagstaff's abdomen.

On Sunday night and in the early morning hours of Monday, 13 August 1973, Delton Harris met defendants at a party in Charlotte. Foster had a .38 caliber pistol in his belt during the party and left with this pistol in his possession. Defendants said they were leaving town and going to New York City. Delton Harris asked to ride with them. They went to the apartment of Belinda Harris in Foster's black 98 Oldsmobile. There, while the car was being packed, Delton Harris saw defendant Smith put a .32 caliber 7-shot revolver in a compartment in the rear of the car. Then the two defendants, accompanied by Del-

ton Harris, one Barry Montgomery, Belinda Harris and her two children, left for New York City in Foster's car and arrived there on Monday evening, 13 August 1973.

On 30 August 1973, Trooper Douglas D. Sinopouli of the New Jersey State Police stopped Foster's car on the New Jersey Turnpike. Defendant Smith was also present in the car. The officer observed a gun partially hidden in the front seat. The weapon was seized and defendants were taken into custody. This weapon was identified as the .32 caliber Burgo, 7-shot revolver, serial 112195, model 108, belonging to Hawkins. It was later determined by ballistics tests that the .32 caliber bullet recovered from the abdomen of Wagstaff was fired from this pistol.

Defendant David Benjamin Smith, alias McCullough, testified as a witness in his own behalf. He said Belinda Harris was his girl friend; that he saw her and Bobby Foster and others at the "Right On" night spot around midnight on the night of 10 August 1973, went to "Bill's" in Foster's car, took Belinda home and picked up Henry Harris and then went to Uncle John's Pancake House, arriving there about 1 a.m. on 11 August 1973. While they sat and waited to be served, Henry Harris left and he saw Henry no more that night. He and Foster remained at the pancake house about two and a half hours, then took Belinda home where he spent the remainder of the night with her. Smith denied any participation in the crime and testified that he obtained the .32 caliber Burgo pistol from Henry Harris (Peterson) the night they were packing the car to go to New York.

Defendant Smith offered Henry Harris, also known as Henry Peterson, who testified that he was serving a term for armed robbery in South Carolina. In August 1973 he lived with his mother and his sister Belinda Harris in a house on McDowell Street in Charlotte. After being assured by the presiding judge that the State, having once placed him on trial with defendants Smith and Foster for the murders of Hawkins and Wagstaff and having failed to make a case, could not again try him upon the same charges, Henry Harris testified that after he left Smith and Foster and his sister Belinda at the pancake house on the night of 11 August 1973, he and another man went to the Days Inn Motel on Tuckaseegee Road and killed Hawkins and Wagstaff while robbing the place. He refused to divulge the name of the other man.

Defendant Foster offered no evidence.

The jury convicted defendant Smith of first degree murder of Norman Bruce Wagstaff in Case No. 74-CR-1599 and first degree murder of Arthur William Hawkins in Case No. 74-CR-1598. Smith was sentenced to death in each case.

The jury convicted defendant Foster of first degree murder of Norman Bruce Wagstaff in Case No. 74-CR-1600 and first degree murder of Arthur William Hawkins in Case No. 74-CR-1601. He was sentenced to death in each case.

From judgments pronounced, each defendant appealed to the Supreme Court, assigning errors discussed in the opinion.

*Rufus L. Edmisten, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the State of North Carolina.*

*Bart William Shuster, attorney for defendant appellant Foster, and Shelley Blum, attorney for defendant appellant Smith.*

HUSKINS, Justice.

Denial of their motion for judgment of nonsuit constitutes defendants' first assignment of error.

A motion for nonsuit in a criminal case requires the court to consider the evidence in the light most favorable to the State, giving it the benefit of every reasonable inference fairly deducible therefrom. *State v. McKinney,* 288 N.C. 113, 215 S.E. 2d 578 (1975) ; *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967). All the evidence actually admitted, whether competent or incompetent, which is favorable to the State must be considered when ruling on the motion. *State v. Walker,* 266 N.C. 269, 145 S.E. 2d 833 (1966) ; *State v. Virgil,* 263 N.C. 73, 138 S.E. 2d 777 (1964). Contradictions and discrepancies are matters for the jury and do not warrant nonsuit. *State v. Bolin,* 281 N.C. 415, 189 S.E. 2d 235 (1972) ; *State v. Murphy,* 280 N.C. 1, 184 S.E. 2d 845 (1971). If there is any evidence tending to prove the fact of guilt or which reasonably leads to that conclusion as a logical and legitimate deduction, it is for the jury to say whether it is convinced beyond a reasonable doubt of the guilt of the accused. So, upon motion for nonsuit the question is whether there is substantial evidence—direct, cir-

cumstantial, or both—to support a finding that the offense charged has been committed and that the accused committed it. *State v. McKinney, supra; State v. Cook,* 273 N.C. 377, 160 S.E. 2d 49 (1968).

[1] When measured by these rules, the State's evidence would permit a jury to find the following facts:

1. In August 1973 Arthur William Hawkins was employed by the Days Inn Motel on Tuckaseegee Road in Charlotte as a security guard and Norman Bruce Wagstaff was employed as a manager-trainee.

2. On Friday evening, 10 August 1973, and in the early morning hours of the following day, Hawkins and Wagstaff were working at the motel in the performance of their duties and were last seen alive at about 1 a.m. on the morning of 11 August 1973. There was $200 in cash in the cash register that night. At about 2:45 a.m. that morning Hawkins and Wagstaff were found on the floor in the office. Each had been shot several times. Hawkins was dead and Wagstaff died shortly thereafter. Hawkins had no wallet on his person and his .32 caliber 7-shot Burgo pistol was missing from his holster. The office had been ransacked and all of the cash was missing from the cash register.

3. Belinda Harris was a good friend of defendants Foster and Smith. On 7 August 1973, between 9 and 10 p.m., she and defendant Foster went to the Days Inn Motel on Tuckaseegee Road to take some clothing to her brother Henry Harris (also known as Henry Harris Peterson) who was staying at the motel with one Edna Felder. While there she changed into a bathing suit and went to the swimming pool but discovered it was closed. She was there long enough to observe the surroundings and the location of the motel.

4. At about 12:30 a.m. on 11 August 1973, Belinda Harris met defendants Smith and Foster at the "Right On Lounge" and rode around with them in Foster's car. They later split up for a short period of time, during which Smith obtained a "rather raggely car." Defendants and Belinda then drove in the old car to the Days Inn Motel where she remained in the car while defendants entered the motel, ostensibly to pick up a girl. While they were gone, she heard two or more sounds like a blowout or a car backfiring. Defendants then returned to the

old car, drove it to a point on the highway where they left it, reentered the original black car belonging to Foster and then drove to the house where Belinda's mother lived, picked up Belinda's brother Henry Harris and went to a restaurant to eat, after which they returned to the Belinda Harris home about 4 or 5 a.m.

5. On the evening of 12 August 1973, Delton Harris met defendants at a party in Charlotte. They told him they were going to New York City and agreed to take Delton Harris with them. While the car was being loaded that evening, Delton Harris saw a .32 caliber pistol in the possession of defendant Smith and later saw the same pistol in the pocket of the car on the way to New York. It was the same pistol offered in evidence and identified as the property of Arthur William Hawkins. Defendants, with several other people, left that night, arriving in New York City on Monday evening, 13 August 1973.

6. On 30 August 1973 a New Jersey State Trooper stopped the car occupied by defendants and seized a gun, partially hidden in the front seat, which was subsequently identified as the weapon belonging to Hawkins and as the weapon which fired at least one shot into Wagstaff's body.

This evidence is sufficient to support a finding that the offense of murder in the first degree was committed; that defendants were familiar with the operation and layout of the motel; that they planned and carried out a robbery there on the night of 11 August 1973 and in the course of the robbery Hawkins and Wagstaff were shot and killed; and that defendants fled the State to avoid apprehension. We hold there is ample evidence to carry the case to the jury and to support a verdict of guilty. The motion for nonsuit was properly denied. *See, e.g., State v. McCall,* 286 N.C. 472, 212 S.E. 2d 132 (1975); *State v. McKnight,* 279 N.C. 148, 181 S.E. 2d 415 (1971); *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971).

[2] Our conclusion with respect to the sufficiency of the evidence is unaffected by defendants' contention that some of the State's evidence is contradictory and casts doubt on the credibility of the witnesses. Such contradictions and discrepancies are matters for the jury and do not warrant nonsuit. This assignment of error is overruled.

By their second assignment of error defendants contend the trial judge erred in not striking the entire testimony of

Belinda Harris. The motion to strike is grounded upon certain answers given by her on cross-examination which suggest that part of her testimony was based on her reading, prior to trial, of the transcript of her testimony at a previous trial rather than on her present recollection of events relevant to defendants' guilt or innocence. For the reasons which follow, we hold this assignment to be without merit.

The ability to recall is subject to obvious limitations. Where, as here, defendants are being tried for the second or third time, there is danger that the memories of key witnesses will fade. For this reason certain doctrines have evolved whereby the witness may be aided in his recollections. It is generally accepted that two types of aid are available for a witness: *past recollection recorded* and *present recollection refreshed.* 1 Greenleaf on Evidence § 439(a) (1899). *See Trust Co. v. Benbow,* 131 N.C. 413, 42 S.E. 896 (1902), *rev'd on other grounds,* 135 N.C. 303, 47 S.E. 435 (1904); *State v. Staton,* 114 N.C. 813, 19 S.E. 96 (1894). It is the latter type with which we are presently concerned.

[3] Under this method the witness has a sufficiently clear recollection so that if allowed merely to refresh or stimulate it, he will be able to testify accurately to the controverted facts. Thus the witness finally testifies from his own recollection, Jones on Evidence § 27:4 (1972), and he uses writings, memoranda and other aids for the sole purpose of "jogging" his memory. Because of the independent origin of the testimony actually elicited, the stimulation of an actual present recollection is not strictly bounded by fixed rules but, rather, is approached on a case-by-case basis looking to the peculiar facts and circumstances present. 3 Wigmore, Evidence § 758 (Chadbourn rev. 1970); *accord,* 1 Greenleaf on Evidence § 439(c) (1899). We thus turn to the particular situation as disclosed by the record on appeal in this case.

[4] At trial, the direct testimony of Belinda Harris was received without objection. On cross-examination, however, it was revealed that she had "refreshed" her memory by looking at a transcript of her testimony at a previous trial which was prepared and given to her by the State. This conduct on the part of the State was entirely proper. It is not required that the memory aid be prepared by the witness himself. Lord Ellenborough early stated this in *Henry v. Lee,* 2 Chitty 124 (1810),

where he said: "If upon looking at *any* document he can so far refresh his memory as to recollect a circumstance, it is sufficient; and it makes no difference that the memorandum is not written by himself, *for it is not the memorandum that is the evidence but the recollection of the witness.*" (Emphasis added.) 3 Wigmore, Evidence § 759 (Chadbourn rev. 1970).

Although some jurisdictions have suggested that the memorandum must be made contemporaneously, or nearly so, with the event, *see Putnam v. United States,* 162 U.S. 687, 40 L.Ed. 1118, 16 S.Ct. 923 (1896) (since distinguished on this point by *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 84 L.Ed. 1129, 60 S.Ct. 811 (1940)); *Palatini v. Sarian,* 15 N.J. Super 34, 83 A. 2d 24 (1951); *Braden Winch Co. v. Surface Equipment Co.,* 196 Okla. 444, 165 P. 2d 640 (1945), there is no clear mandate for such a restriction. Moreover, where the stimulus is prior testimony or depositions, the overwhelming majority permit the recollection of the witness to be refreshed. *See, e.g., United States v. Barrow,* 363 F. 2d 62 (3d Cir. 1966), *cert. denied* 385 U.S. 1001 (1967); *People v. Seiterle,* 65 Cal. 2d 333, 420 P. 2d 217, 54 Cal. Reptr. 745 (1966), *cert. denied* 387 U.S. 912 (1967); *State v. Holmes,* 281 Minn. 294, 161 N.W. 2d 650 (1968); *People v. Ferraro,* 293 N.Y. 51, 55 N.E. 2d 861 (1944); *State v. Peacock,* 236 N.C. 137, 72 S.E. 2d 612 (1952); *State v. Coffey,* 210 N.C. 561, 187 S.E. 754 (1936); *State v. Finley,* 118 N.C. 1161, 24 S.E. 495 (1896); *Hurley v. State,* 46 Ohio St. 320, 21 N.E. 645 (1889).

[5]  Nor do we find any problem with the use of a transcript to refresh the memory of a witness *prior* to trial. *Manufacturing Co. v. R. R.,* 222 N.C. 330, 23 S.E. 2d 32 (1942); *State v. Cheek,* 35 N.C. 114 (1851).

Nevertheless, the defendants contend that the testimony should have been stricken because the transcript did not "refresh" her memory but merely provided a script for her to recite at trial. The evidence on this point is contradictory. At one point the witness, when questioned as to the origin of her testimony, stated that it was "[o]f my own memory." At another point she said, "some is to my memory, and some isn't." Such statements raise questions as to the validity of her testimony.

[6]  Because of the looser standards involved with present recollection refreshed, it is critical that the actual circumstances

of each case conform to the underlying assumptions of the doctrine. That is, the memorandum must actually "refresh" the memory of the witness and his subsequent testimony must indeed be from his own recollection. Where the testimony of the witness purports to be from his refreshed memory but is *clearly* a mere recitation of the refreshing memorandum, such testimony is not admissible as present recollection refreshed and should be excluded by the trial judge. *See United States v. Riccardi,* 174 F. 2d 883 (3d Cir. 1949), *cert. denied* 337 U.S. 941 (1949); *State v. Perelli,* 125 Conn. 321, 5 A. 2d 705 (1939); *accord,* 3 Wigmore, Evidence § 758 (Chadbourn rev. 1970). Where there is doubt as to whether the witness purporting to have a refreshed recollection is indeed testifying from his own recollection, the use of such testimony is dependent upon the credibility of the witness and is a question for the jury. *State v. Perelli,* 128 Conn. 172, 21 A. 2d 389 (1941); *see Wise, Boles & Bowdoin v. Fuller,* 11 Ala. App. 427, 66 So. 827 (1914); *State v. Burns,* 158 Iowa 440, 139 N.W. 1094 (1913); *St. Martin State Bank v. Steffes,* 88 Mont. 85, 290 P. 259 (1930); *State v. Crater,* 230 Or. 513, 370 P. 2d 700 (1962).

[7] Here the trial judge, in his discretion, denied defendants' request to strike the testimony of the witness and submitted it to the jury for consideration. The exercise of that discretion will not be disturbed on appeal absent abuse. See 1 N. C. Index 3d, Appeal and Error § 54, and cases cited. On the record presented here, we find no abuse of discretion in the denial of the defendants' motion to strike all the testimony of Belinda Harris. This assignment is overruled.

[8] Defendants next assign as error the consolidation of the cases for trial. Smith contends he was prejudiced in that the evidence of Foster's visit to the motel three days prior to the date of the crime would not have been admissible against Smith in a separate trial. Foster contends he was prejudiced by the consolidation in that he offered no evidence and yet was denied the last argument to the jury. Neither contention has any merit.

[9, 10] Ordinarily, motions to consolidate cases for trial are within the sound discretion of the trial judge. *State v. Alford,* 289 N.C. 372, 222 S.E. 2d 222 (1976); *State v. King,* 287 N.C. 645, 215 S.E. 2d 540 (1975). Consolidation for trial is generally proper where the offenses charged are of the same class and

are so connected in time and place that evidence at trial upon one indictment is competent and admissible on the other. *State v. Taylor,* 289 N.C. 223, 221 S.E. 2d 359 (1976). Absent a showing that a joint trial has deprived an accused of a fair trial, the exercise of the court's discretion will not be disturbed on appeal. *State v. Fox,* 274 N.C. 277, 163 S.E. 2d 492 (1968). Such prejudice arises most often where the defendants offer antagonistic defenses, *State v. Alford, supra,* or where one defendant has made a confession which is inadmissible against the other. *Bruton v. United States,* 391 U.S. 123, 20 L.Ed. 2d 476, 88 S.Ct. 1620 (1968) ; *State v. Fox, supra.* In the present case, consolidation was proper and no abuse of discretion has been shown. Defendants' third assignment of error is overruled.

Defendants contend the trial court erroneously allowed the prosecutor to pose leading questions. For example, Officer O'Brien of the Charlotte Police Department was asked: "Did you notice whether or not the man was wearing any firearms?" Another example: "There was no weapon in the holster." The use of these and similar "leading" questions constitutes defendants' fourth assignment of error.

[11] A leading question is one that suggests the desired answer. Frequently, questions that may be answered by "yes" or "no" are regarded as leading. 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 31, and cases there cited. Even so, the trial court has discretionary authority to permit leading questions in proper instances, *State v. Painter,* 265 N.C. 277, 144 S.E. 2d 6 (1965), and unless prejudice is shown the discretionary action of the trial court will not be disturbed. *State v. Cranfield,* 238 N.C. 110, 76 S.E. 2d 353 (1953). When the testimony is competent and there is no abuse of discretion, defendant's exception will not be sustained. *State v. Brunson,* 287 N.C. 436, 215 S.E. 2d 94 (1975) ; *State v. Edwards,* 286 N.C. 140, 209 S.E. 2d 789 (1974). Here, no abuse of judicial discretion is shown. Some of the questions challenged were not leading; in some, the contested evidence elicited was admitted elsewhere without objection; and in others, the evidence elicited was obviously not prejudicial. Defendants' fourth assignment of error is overruled.

[12] Defendants' fifth assignment is grounded on the contention that the scope of their cross-examination of State's witness Delton Harris was improperly limited by the trial judge. The

record shows that the trial judge sustained an objection by the State to defendants' inquiry as to the date upon which Delton Harris had been convicted for an unrelated larceny. Defendants contend they were entitled to pose the question and elicit an answer for the purpose of impeaching his memory of dates.

It is clear from the record that Delton Harris' memory for dates was adequately impeached by his later testimony. The question under discussion was merely cumulative and its exclusion resulted in no prejudice to defendants. This assignment is overruled.

[13]    During the district attorney's cross-examination of defendant Smith, the following exchange occurred:

"Q. I'll ask you if Bobby Foster didn't make a statement to the effect to you—

MR. SHUSTER [Defense Counsel] : Objection.

COURT: Overruled.

DEFENDANTS' EXCEPTION NO. 27.

Q. 'You didn't have to shoot him,' at which point you responded, 'If I hadn't shot him, he would have shot one of us. He had a gun.'

A. I think Robert Davis cleared that for you.

Q. Excuse me?

A. I think Robert Davis cleared that for you, and that's where you got the question from. I think he cleared that for you. I did not say anything to Bobby concerning that, nor did Bobby say anything to me concerning that. I deny that."

Defendants contend that by the question posed over their objection, the State was permitted to place prejudicial material before the jury knowing that it would be denied. Thus they contend that the question was posed in bad faith and that a mistrial should have been granted. Defendants' sixth and eighth assignments of error are grounded on this exchange.

The challenged question does not concern collateral matters, as in *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971), and *State v. Foster,* 284 N.C. 259, 200 S.E. 2d 782 (1973). Rather, it seeks to elicit direct evidence of the guilt of

the defendants. Therefore, the question was entirely proper if asked in good faith. *See* 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 111. The record on appeal clearly indicates that based on a prior extrajudicial statement by Robert Davis, the State had good reason to believe defendant had made the statements embraced in the question. The voluntary statement of Robert Davis contains the following: "Later Bobby told Benny you didn't have to shoot him. Benny said if I hadn't shot him he would have shot one of us he had a gun to [sic]. One of them said we are going to have to get out of here [be]cause it's getting to [sic] hot. They talked on about leaving Charlotte." Thus the record does not support defendants' contention that the question was asked in bad faith. Moreover, the trial judge instructed the jury that a negative answer to a question which assumes or insinuates a fact not in evidence "is not evidence of any kind." There is no merit in assignments six and eight.

The failure of the trial judge to rule on a certain exception during the State's cross-examination of defendant Smith constitutes appellants' seventh assignment of error.

[14-16]   When an objection is made the judge should rule upon it prior to the close of the proponent's case. 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 28. Sustained and systematic failure to rule upon objections may indicate an opinion by the trial judge in violation of G.S. 1-180. *State v. Lynch*, 279 N.C. 1, 181 S.E. 2d 561 (1971). Here, the record reveals only one instance where the trial judge failed to rule upon an objection. Nothing suggests an opinion by the court in violation of G.S. 1-180. Furthermore, the question objected to was proper in all respects. Thus the court's failure to rule upon the particular objection resulted in no prejudice. This assignment is overruled.

[17]   Defendants challenge, as impermissible, portions of the prosecution's arguments before the jury. They bring forward two exceptions on appeal, but the record indicates that objection was made at trial only to the first exception. It is the general rule that an impropriety in the argument must be brought to the attention of the trial judge in time for it to be corrected, *State v. Peele*, 274 N.C. 106, 161 S.E. 2d 568 (1968), *cert. denied* 393 U.S. 1042, 21 L.Ed. 2d 590, 89 S.Ct. 669 (1969), unless the impropriety is so gross that it cannot be corrected, in

which event the court must act *ex mero motu. State v. Miller,* 271 N.C. 646, 157 S.E. 2d 335 (1967). We find no gross impropriety with respect to the second remark to which no objection was made. So, for purposes of review, we consider only the statement properly objected to. That statement reads as follows: "Delton Harris came along. The State had to put Delton Harris up. He's a friend of the defendants. He's the kind of person they run around with."

Defendants contend the quoted statement attempts to impeach both the character of the State's witness Delton Harris and the character of defendants themselves. The argument is not persuasive. The record does not support the contention that the State is attempting to impeach the testimony of Delton Harris. It is apparent that his testimony was important to the State's case. Rather, the record shows it was the defense on cross-examination of Delton Harris who elicited evidence of bad character tending to impeach him.

Likewise, the contention that the quoted excerpt impermissibly reflected on the character of the defendants is without merit. When the district attorney's argument to the jury is challenged as improper, the argument of defense counsel should be placed in the record on appeal to enable appellate courts to determine whether the challenged argument has been provoked. *State v. Smith,* 290 N.C. 148, 226 S.E. 2d 10 (1976); *State v. Miller,* 288 N.C. 582, 220 S.E. 2d 326 (1975). Here, arguments made by defense counsel concerning the witness Delton Harris are not included in the record; only isolated excerpts from the argument of the district attorney are included. Under these circumstances we are unable to examine the challenged statements of the district attorney in the context in which they were presented to the jury and thus must confine our scrutiny to the face of the arguments presented, assuming such inferences as to the nature of the arguments omitted as are reasonable in light of the facts of this case. *See State v. Smith, supra; State v. Miller, supra.* Having done so, we find no merit in defendants' contention. Furthermore, the record discloses that Delton Harris had known defendants for a month or so, was present with them at a party on the night of 12 August 1973, rode to New York with them in Foster's black 98 Oldsmobile, and was serving time for armed robbery at the time he testified at the trial of this case. We conclude on these facts that the statement of the district attorney was essentially true and the

argument properly permitted. Defendants' ninth assignment is overruled.

[19] In their tenth assignment of error defendants contend the court erred in permitting Craig Plyman and Edna Mae Hawkins to testify as State's witnesses when their names were not on the list of witnesses furnished by the district attorney to defense counsel pursuant to pretrial discovery motion. The testimony of Plyman tended to corroborate what the witness Parrish had said on cross-examination about the number of Days Inn Motels open and in operation in Charlotte on the date of the crime. Mrs. Hawkins, widow of one of the victims, corroborated the previous testimony of Stanley Harris as to the signature of her husband for the purchase of the .32 caliber Burgo pistol from Fox Jewelry and Loan in Jacksonville, Florida. The record discloses that the district attorney furnished defendants the names and addresses of twenty-one witnesses but the names of these two witnesses were not on the list.

[18, 19] No error, prejudicial or otherwise, was committed in permitting these two witnesses to testify. No right of discovery in criminal cases existed at common law. *State v. Davis*, 282 N.C. 107, 191 S.E. 2d 664 (1972). No right to discover the names and addresses of State's witnesses exists by statute in North Carolina. Neither former G.S. 15-155.4 nor G.S. 15A-903 requires the State to furnish the accused with a list of witnesses who are to testify against him. *See State v. Hoffman*, 281 N.C. 727, 190 S.E. 2d 842 (1972) ; *State v. Peele*, 281 N.C. 253, 188 S.E. 2d 326 (1972) ; *State v. Macon*, 276 N.C. 466, 173 S.E. 2d 286 (1970). Here, however, the State substantially complied with the order of the court to furnish the names and addresses of the State's witnesses. Where such a list has been furnished and the State subsequently seeks to call a witness not on that list, the court will look to see whether the district attorney acted in bad faith, *State v. Carter*, 289 N.C. 35, 220 S.E. 2d 313 (1975) ; *State v. Lampkins*, 286 N.C. 497, 212 S.E. 106 (1975), and whether the defendant was prejudiced thereby. *State v. Carter, supra; State v. Hoffman, supra.* In the case before us bad faith by the omission of the names is not shown. Further, it is clear that defendants have suffered no prejudice as a result of the admission of the challenged testimony.

It is appropriate to note in connection with this assignment that when pretrial discovery legislation was introduced in

the General Assembly, it provided for discovery of names and addresses of witnesses the State intended to call plus their criminal records, but that provision was deleted before the measure was enacted. See Official Commentary following G.S. 15A-903. Furthermore, the phrase "or the name of each additional witness" was inadvertently left in G.S. 15A-907 when the Criminal Procedure Act was enacted in 1973 and, after discovery of the inadvertence, deleted by the General Assembly in 1975. The same inadvertent enactment and subsequent deletion took place with respect to G.S. 15A-910(b) and (c) concerning the furnishing of names and addresses of witnesses. Thus it was never the intention of the General Assembly when it enacted Article 48 of the Criminal Procedure Act to require the district attorney to furnish the names and addresses of witnesses the State intended to call. It follows that trial judges should not encourage, by court order, what the Legislature specifically rejected during consideration of the legislation. Defendants' tenth assignment is overruled.

We next examine the contention that the trial court erred in admitting the previously recorded testimony of Stanley Harris. Defendants' eleventh assignment of error is based on admission of such testimony.

[20] The use of previously recorded testimony is authorized if it be shown that: (1) The witness is unavailable; (2) the proceedings at which the testimony was given was a former trial of the same cause, or a preliminary stage of the same cause, or the trial of another cause involving the issue and subject matter at which the testimony is directed; and (3) the current defendants were present at that time and represented by counsel. 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 145. See State v. Cope, 240 N.C. 244, 81 S.E. 2d 773 (1954); Settee v. Electric Railway, 171 N.C. 440, 88 S.E. 734 (1916). Compare State v. Prince, 270 N.C. 769, 154 S.E. 2d 897 (1967). Here defendants contend the witness Stanley Harris was available but concede that requirements (2) and (3) are met. We examine the record with respect to the availability of the witness.

The witness, if available, must be produced and testify de novo. State v. Cope, supra. This requirement is grounded on the right of confrontation guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States.

*Mancusi v. Stubbs,* 408 U.S. 204, 33 L.Ed. 2d 293, 92 S.Ct. 2308 (1972) ; *Barber v. Page,* 390 U.S. 719, 20 L.Ed. 2d 255, 88 S.Ct. 1318 (1968). However, the right of confrontation is not denied where the witness has become incapacitated to testify in court by reason of a permanent or indefinite illness. *State v. Prince, supra.*

[21]   Here, the State's evidence tends to show that the witness lived in Florida, was 70 years old, had just had surgery for a tumor of the breast and an injured foot, and his doctor certified that travel would be detrimental to his health. We hold this evidence sufficient to support the finding that the witness was unavailable. Compare *Norburn v. Mackie,* 264 N.C. 479, 141 S.E. 2d 877 (1965), a civil case in which previously recorded testimony was admitted where a witness lived more than 100 miles away, was at least 65 years old, had undergone a recent operation, and travel would be detrimental to his health. The previously recorded testimony of the witness Stanley Harris was properly admitted. Defendants' eleventh assignment of error is overruled.

[22]   Defendants, in their twelfth assignment of error, contend the court erred in admitting the .32 caliber Burgo pistol into evidence without requiring a complete chain of custody.

We find no merit in this assignment. The New Jersey State Trooper, Sinopouli, testified that he apprehended defendants in August 1973 in New Jersey and, at the time of the arrest, made a written report in which he recorded the serial number and model of the gun, to wit: serial 112195 and model 108. These numbers correspond to the serial and model numbers on the gun sold to the victim Hawkins and on the gun admitted into evidence as State's Exhibit 3. There is adequate testimony establishing that the ballistics tests were run on State's Exhibit 3. This evidence is sufficient to identify the weapon and establish its competency. See *State v. Boyd,* 287 N.C. 131, 214 S.E. 2d 14 (1975), a case with strikingly similar facts. This assignment is overruled.

Defendants' thirteenth assignment, contesting the death penalty, is sustained.

[23]   Defendants' fourteenth assignment contests the State's use of its peremptory challenges. Defendants argue that the State impermissibly used its peremptory challenges to exclude

blacks from the jury, thus denying defendants a representative jury. No evidence was offered to support the contention; rather, counsel seems to rely on personal opinions and memories of previous jury trials in Mecklenburg County.

Peremptory challenges allowed each party by G.S. 9-21 are challenges which may be made or omitted according to the judgment, will, or caprice of the party entitled thereto, without assigning any reason therefor, or without being required to assign a reason. *State v. Carey,* 285 N.C. 497, 206 S.E. 2d 213 (1974); *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974); *State v. Allred,* 275 N.C. 554, 169 S.E. 2d 833 (1969). The essential nature of the peremptory challenge denotes that it is a challenge exercised without a reason stated, without inquiry and without being subject to the court's control. *Lewis v. United States,* 146 U.S. 370, 36 L.Ed. 1011, 13 S.Ct. 136 (1892). In other words, the peremptory challenge permits rejection for a real or imagined partiality, and an examination of the prosecutor's reasons for the exercise of his challenges in any given case is not permitted. *Swain v. Alabama,* 380 U.S. 202, 13 L.Ed. 2d 759, 85 S.Ct. 824 (1965). There is no merit in defendants' fourteenth assignment of error and it is therefore overruled.

[24] Defendants' fifteenth assignment relates to the exclusion of certain jurors who stated on voir dire that they could not convict defendants because the conviction would result in a judgment of death. Defendants argue that since the death penalty is now unconstitutional these jurors would have been eligible and that defendants were therefore denied a representative jury.

Suffice it to say that when the jury was selected in this case, the trial judge adhered strictly to the law as prescribed by *Witherspoon v. Illinois,* 391 U.S. 510, 20 L.Ed. 2d 776, 88 S.Ct. 1770 (1968), and *State v. Honeycutt,* 285 N.C. 174, 203 S.E. 2d 844 (1974). *See State v. Monk,* 291 N.C. 37, 229 S.E. 2d 163 (1976); *State v. Swift,* 290 N.C. 383, 226 S.E. 2d 652 (1976). There is no merit in this contention.

[25] Even so, defendants further argue that the court erred by refusing defense counsel an opportunity to examine a potential juror who had been challenged by the State on grounds that he could not convict knowing the death penalty would be imposed. Defendants sought, and were denied, an opportunity to

"rehabilitate" the potential juror by further interrogation. This argument is without merit. It is settled law that a challenge for cause should be sustained where the venireman challenged states unmistakably that he would, by reason of the death penalty, automatically vote against conviction without regard to any evidence developed at trial. *Witherspoon v. Illinois, supra; State v. Monk, supra; State v. Carey, supra; State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817 (1974) ; *State v. Fowler,* 285 N.C. 90, 203 S.E. 2d 803 (1974) ; *State v. Anderson,* 281 N.C. 261, 188 S.E. 2d 336 (1972) ; *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969). Here, the veniremen who were excused for cause made it unmistakably clear that they could not, under any circumstances, return a verdict of guilty knowing the mandatory death penalty would be imposed. Upon challenge, the court properly excused each venireman at that point.

[26] When the regularly summoned venire was exhausted, the court directed an officer to summon additional talismen. This was done and two jurors were examined, passed by both sides, and seated as jurors in the trial of this case. Defendants now contend that these two jurors did not come from a cross-section of the population and the court erred in allowing them to be selected in such fashion. The contention has no merit because the record shows defendants did not exhaust their peremptory challenges. They examined these jurors, passed them, and will not now be heard to complain. No prejudice is shown. *State v. Fountain,* 282 N.C. 58, 191 S.E. 2d 674 (1972) ; *State v. Baldwin,* 276 N.C. 690, 174 S.E. 2d 526 (1970). *See State v. Boyd,* 287 N.C. 131, 214 S.E. 2d 14 (1975). Defendants' fifteenth assignment of error is overruled.

[27] Defendants' motion in arrest of judgment was properly denied because the indictments are proper and no fatal defect appears on the face of the record. *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156 (1971) ; *State v. Higgins,* 266 N.C. 589, 146 S.E. 2d 681 (1966).

Defendants' motion to set aside the verdicts is merely formal and requires no discussion. It is addressed to the discretion of the court and refusal to grant it is not reviewable. *State v. Downey,* 253 N.C. 348, 117 S.E. 2d 39 (1960).

[28] Defendants assert the trial court erred in its charge to the jury but no portion of the charge is specified as erroneous and no reasons, arguments or citations of authority are con-

tained in the brief as required by Rules 10 and 28, Rules of Appellate Procedure, 287 N.C. 671. Under the cited rules, no question is presented concerning the charge. Even so, in light of the seriousness of the case, we have reviewed the charge for error and find none.

[29] In *Woodson v. North Carolina,* _____ U.S. _____, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (decided 2 July 1976), the United States Supreme Court invalidated the death penalty provisions of G.S. 14-17 (Cum. Supp. 1975), the statute under which defendants were indicted, convicted and sentenced to death. Sentences of life imprisonment are therefore substituted in this case in lieu of the death penalty by authority of the provisions of section 7, chapter 1201 of the 1973 Session Laws (1974 Session).

Our examination of the entire record discloses no error affecting the validity of the verdicts returned by the jury. The trial and verdicts must therefore be upheld. To the end that sentences of life imprisonment may be substituted in lieu of the death sentences theretofore imposed, the case is remanded to the Superior Court of Mecklenburg County with directions (1) that the presiding judge, without requiring the presence of defendants, enter judgments imposing life imprisonment for the first degree murders of which defendants have been convicted; and (2) that in accordance with said judgments the clerk of superior court issue commitments in substitution for the commitments heretofore issued. It is further ordered that the clerk furnish to the defendants and their counsel a copy of the judgments and commitments as revised in accordance with this opinion.

No error in the verdicts.

Death sentences vacated.