An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-52

Filed 21 January 2026

Richmond County, Nos. 19CR053067-760, 19CR053068-760, 19CR053069-760

STATE OF NORTH CAROLINA

v.

KURTIS SCOTT MADSEN, Defendant.

Appeal by Defendant from judgment entered 27 June 2024 by Judge Stephan R. Futrell in Richmond County Superior Court. Heard in the Court of Appeals 16 October 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Heidi M. Williams, for the State.*

> *Cooley Law Office, by Craig M. Cooley, for Defendant-Appellant.*

CARPENTER, Judge.

Kurtis Scott Madsen ("Defendant") appeals from judgment entered after a jury found him guilty of: one count of statutory rape of a child by an adult; four counts of statutory sexual offense with a child by an adult; and one count of assault on a child under twelve. On appeal, Defendant argues the trial court erred by allowing the State to refresh a witness's recollection, publishing a portion of a forensic interview

video to the jury, and allowing a witness to improperly vouch for the accusing witnesses. After careful review, we discern no error.

## I. Factual & Procedural Background

On 2 December 2019, a Richmond County grand jury indicted Defendant for: one count of statutory rape of a child by an adult; four counts of statutory sexual offense with a child by an adult; and one count of assault on a child under twelve. The charges pertain to the minor children, Iris and Robert.[1] Defendant's case proceeded to trial on 24 June 2024, and the evidence tended to show the following.

Iris, born July 2012, and her younger brother, Robert, born September 2014, lived with their biological mother and her boyfriend, Defendant. Robert has cerebral palsy, wears a diaper, and "does not know how to walk." In their mother's home, Iris and Robert shared a room with separate beds. Iris and Robert were occasionally left home alone with Defendant. On 27 September 2019, Robert told his teacher that Defendant sexually assaulted him. Robert's teacher informed the school's program director, who then notified the Richmond County Division of Social Services.

Iris testified at trial, when she was approximately twelve years old. According to Iris, when she and Robert were home alone with Defendant, Defendant would enter their bedroom and "have [Iris] take [her] pants off . . . underwear off and take his pants and underwear off and show [Iris] his private part." Then Defendant "would

---

[1] Pseudonyms are used to protect the identities of the minor children and for ease of reading. *See* N.C. R. App. P. 42(b).

stick his front part right in the back of [Iris'] private part." Iris clarified that by "back" of her private part, she was referring to her "butt." Similarly, Iris clarified that by Defendant's "front part," she was referring to "the part he used to go pee." Iris testified that Defendant would also do this when her mother was home. Iris was seven at the time and said these events happened "every day."

Iris testified that after Defendant assaulted her, "he would go to [Robert]" and "would do the exact same thing that he did to [Iris] to [Robert]." Robert would cry and say "stop," and Iris would "try [her] best to fight for [Robert] and try to tell [Defendant] to stop it now." Iris saw Defendant assault Robert multiple times. Robert was four at the time of these events. During another instance, Defendant "came in the bathroom, and he sat [Iris] up on top of the table and used his front private part to put in [her] mouth."

The State's theory behind one of Defendant's statutory rape charges was vaginal penetration involving Iris. When the State questioned Iris whether Defendant did "anything to [her] front part[,]" Iris said: "Yes, but I can't remember it." Iris testified that Defendant touched her "front part" with "[h]is front private part." When asked "did [Defendant] put his front private part inside of you[,]" Iris responded, "No." The State immediately asked Iris "[w]hat did [Defendant do" and Iris said, "He – I can't remember." Iris continued, "No, I'm trying to think of the ones that I remember, but for some reason I can't remember it." The State then asked Iris about State's Exhibit 4, a video of Iris's forensic interview. Iris said she recognized

the video, remembered the interview, and told "the lady at the hospital the true things that happened to [her]." The State moved to admit Exhibit 4 "into evidence for corroborative purposes." Defendant objected and the trial court excused the jury from the courtroom.

The State explained it sought to admit Exhibit 4 for corroborative purposes and "also . . . to refresh Iris' recollection." Regarding Defendant's objection, defense counsel contended the State was attempting "to change" Iris's testimony, not refresh her recollection, and that it would be "harmful" to show the jury the video. The trial court allowed the State to attempt to refresh Iris's recollection with a portion of Iris's forensic interview video (the "Snippet"). After viewing the Snippet, Iris said she remembered what Defendant did to her "front part" with his "front part." Then, Iris testified that Defendant "would put his front part *on* [her] front private part." Thereafter, the State said that Iris's memory had not been refreshed and moved to introduce the Snippet as a past recollection recorded under Rule 803(5).

The State and defense counsel discussed the foundational requirements for admitting the Snippet as a past recollection recorded. Defense counsel continued to object to the Snippet being played for the jury. Specifically, defense counsel said, "Just in case there's any doubt . . . we still object and would seek to renew at the appropriate time. But just so we're all clear, we object." The jury returned to the courtroom and the State played the Snippet for the jury to establish the foundational requirements for a past recollection recorded. In doing so, the State asked Iris, "Does

[the Snippet] refresh your recollection of what happened?" Iris said, "A little bit, yeah." The State inquired whether Iris "actually remember[ed] [Defendant] putting his front part in [her] front part?" Iris replied, "Yeah." Ultimately, the trial court did not admit the Snippet as a past recollection recorded but later admitted Exhibit 4 with a limiting instruction that it was only to be used for corroborative purposes.

Dr. Molly Berkoff, a child abuse pediatrician, testified as an expert in child abuse pediatrics. Dr. Berkoff said she received a sexual abuse report from Richmond Child Protective Services concerning Iris and Robert. Dr. Berkoff testified that she conducted child medical examinations of Iris and Robert, and neither child showed physical signs of sexual abuse. Dr. Berkoff said that when she examined Robert's genital and anal areas, he "had a change in his demeanor" and "became distressed" and "shut down." Dr. Berkoff explained that she does not find physical evidence in many sexual abuse cases, because the exam frequently occurs days after the latest incident.

The jury found Defendant guilty as charged. The trial court sentenced Defendant to consecutive sentences of 300 to 420 months' imprisonment for each felony offense along with a concurrent sentence of 60 days' imprisonment for the misdemeanor. Defendant gave notice of appeal in open court.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444 (2023).

## III. Issues

The issues are whether the trial court erred by: (1) allowing the State to refresh Iris's recollection; (2) introducing the Snippet into evidence; and (3) allowing Dr. Berkoff to improperly vouch for Iris and Robert.

## IV. Analysis

### A. Present Recollection Refreshed

First, Defendant argues the trial court erred by allowing the State to attempt to refresh Iris's recollection with the Snippet because her statements in the Snippet did not match her testimony. Specifically, Defendant argues Iris testified that no vaginal penetration occurred, whereas in the Snippet she said it did. Therefore, according to Defendant, the State was not attempting to refresh Iris's recollection but rather attempting to change her testimony. We disagree.

A witness's use "of a memory aid to refresh his recollection" is reviewed for abuse of discretion.[2] *State v. Jones*, 280 N.C. App. 241, 247, 866 S.E.2d 509, 515 (2021). "Abuse of discretion means 'manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a reasoned decision.'" *State v. Bagley*, 183 N.C. App. 514, 524, 644 S.E.2d 615, 622 (2007) (quoting *State v. Hutchinson*, 139 N.C. App. 132, 137, 532 S.E.2d 569, 573 (2000)).

---

[2] Defense counsel clarified he was objecting to the State attempting to refresh Iris's recollection because defense counsel believed the State was attempting to "change" Iris's testimony rather than refresh her recollection.

"Present recollection refreshed" is a type of aid available for a witness so she "will be able to testify accurately to the controverted facts." *State v. Smith*, 291 N.C. 505, 516, 231 S.E.2d 663, 670 (1977); N.C. Gen. Stat. § 8C-1, Rule 612 (2023). The witness should testify "from his own recollection" by using "writings, memoranda, and other aids for the sole purpose of 'jogging' his memory." *Id.* at 516, 231 S.E.2d at 670. As the witness's testimony comes from her own recollection that is independent from the aid used, present recollection refreshed does not have "fixed rules but, rather, is approached on a case-by-case basis looking to the peculiar facts and circumstances present." *Id.* at 516, 231 S.E.2d at 670–71. But the aid must "actually 'refresh'" the witness's memory. *Id.* at 518, 231 S.E.2d at 671. If the witness's memory is not refreshed by the aid, "such testimony is not admissible as present recollection refreshed and should be excluded by the trial judge." *Id.* at 518, 231 S.E.2d at 671.

The State's theory behind one of Defendant's statutory rape charges involved an instance of vaginal penetration with Iris. The State, therefore, attempted to elicit testimony from Iris describing penetration. In response, Iris testified that Defendant touched her "front part" with "[h]is front part." The State then asked Iris whether Defendant "put his front part inside of [her]?" Iris answered no but repeatedly said she could not remember the details. As a result, the State sought to use the Snippet to refresh Iris's recollection regarding the vaginal penetration outside the presence of the jury.

Given Iris's tender age at the time of trial, and her testimony explaining that Defendant touched her "front part" with "[h]is front part," which is not inconsistent with vaginal penetration, the trial court's decision to allow the State to attempt to refresh Iris's recollection with the Snippet was not arbitrary or manifestly unsupported by reason. At this point in her testimony, Iris's inability to recall the specifics of the incident, which occurred approximately five years before trial when she was seven, warranted refreshing. *See id.* at 516, 231 S.E.2d at 670. Indeed, the "ability to recall is subject to obvious limitations" as "there is danger that the memories of a key witness will fade." *Id.* at 516, 231 S.E.2d at 670. Based on the presence of these "peculiar facts and circumstances," *see id.* at 516, 231 S.E.2d at 670–71, the trial court did not abuse its discretion, *see Jones*, 280 N.C. App. at 247, 866 S.E.2d at 515.[3]

## B. Past Recollection Recorded

Defendant also argues the trial court "erred by initially allowing the State to introduce [the Snippet] into evidence as substantive evidence under Rule 803(5)." We disagree.

---

[3] Defendant also argues the trial court erred by allowing the State to attempt to refresh Iris's recollection a second time. We reject Defendant's argument because when the Snippet was played for Iris in the presence of the jury, the State was attempting to establish the foundational requirements to admit the Snippet as a past recollection recorded. *See* Infra Pt. B. In other words, the State was not attempting to refresh Iris's recollection but rather played the Snippet for another purpose.

After Iris demonstrated that her recollection was not sufficiently refreshed by the Snippet, as explained above, the State moved to introduce the Snippet as a past recollection recorded. To determine whether the Snippet was admissible as a past recollection recorded, the trial court allowed the State to play the Snippet in front of the jury and question Iris. *See State v. Love*, 156 N.C. App. 309, 314, 576 S.E.2d 709, 712 (2003) (explaining the foundational requirements for admitting a past recollection recorded under Rule 803(5)). During questioning, Iris did not demonstrate that she had "an insufficient recollection" of the content in the Snippet. *See id.* at 314, 576 S.E.2d at 712. As a result, the Snippet was not admitted as substantive evidence under Rule 803(5). The Snippet was, however, later admitted as part of the entirety of State's Exhibit 4 and published to the jury for corroborative purposes. Because the trial court did not admit the Snippet as substantive evidence under Rule 803(5), which Defendant concedes while simultaneously arguing to the contrary, Defendant's argument is meritless.

## C. Improper Vouching

Finally, Defendant argues the trial court erred by allowing Dr. Berkoff's testimony because it amounted to improper vouching. Defendant concedes the issue is unpreserved because he did not object to Dr. Berkoff's testimony. *See* N.C. R. App. P. 10(a)(1) (To preserve an issue for review on appeal, a defendant "must have presented to the trial court a timely request, objection, or motion, stating the specific

grounds for the ruling [sought] if the specific grounds were not apparent from the context.").

Nonetheless, we may "review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996) (citing *State v. Sierra*, 335 N.C. 753, 761, 440 S.E.2d 791, 796 (1994)). The defendant, however, must "specifically and distinctly" argue plain error. *See State v. Frye*, 341 N.C. 470, 496, 461 S.E.2d 664, 677 (1995); N.C. R. App. P. 10(a)(4). To establish plain error, a defendant must pass a three-part test:

> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict. Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (internal quotation marks and citations omitted). As Defendant "specifically and distinctly" argues the trial court plainly erred by allowing Dr. Berkoff's testimony, we will review for plain error. *See Frye*, 341 N.C. at 496, 461 S.E.2d at 677.

"In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an

impermissible opinion regarding the victim's credibility." *State v. Stancil*, 355 N.C. 266, 266–67, 559 S.E.2d 788, 789 (2002) (emphasis in original). But "an expert may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith." *Id.* at 266–67, 559 S.E.2d at 789.

Defendant argues Dr. Berkoff improperly vouched for the children's allegations against him by referencing the reports she created after examining Iris and Robert. While Dr. Berkoff testified that she generated reports for Iris and Robert, Dr. Berkoff did not testify that the reports contained a sexual abuse diagnosis.

Defendant also challenges Dr. Berkoff's statement that

> as a pediatrician we often make medical diagnoses of sexual abuse in general with statements made by the child and in the absence of having either a positive laboratory finding or a physical exam finding, so we really use information from what the child is telling us in order to understand what happened to them.

Allowing this statement was not a fundamental error because Dr. Berkoff was speaking to her general process, not the events of this case. Dr. Berkoff never testified that she diagnosed Iris or Robert as having been sexually abused, nor did she testify that sexual abuse in fact occurred as to either child. *See Stancil*, 355 N.C. at 266–67, 559 S.E.2d at 789.

Accordingly, the trial court did not err by allowing Dr. Berkoff's testimony. Because the trial court did not err, it did not plainly err. *See Reber*, 386 N.C. at 158, 900 S.E.2d at 786.

## V. Conclusion

The trial court did not abuse its discretion by allowing the State to attempt to refresh Iris's recollection. In addition, the trial court did not admit the Snippet as substantive evidence under Rule 803(5); instead, the trial court admitted the Snippet as corroborative evidence with a limiting instruction. Finally, Dr. Berkoff's testimony did not amount to improper vouching. Accordingly, we discern no error.

NO ERROR.

Judges HAMPSON and FREEMAN concur.

Report per Rule 30(e).