IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-592

No. COA20-173

Filed 2 November 2021

Wake County, Nos. 17CRS221514, 221515

STATE OF NORTH CAROLINA

v.

DEVONTE GLENN JONES, Defendant.

Appeal by defendant from judgment entered on or about 18 June 2019 by Judge

Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 9

March 2021.

*Attorney General Joshua H. Stein, by Senior Deputy Attorney General Amar Majmundar, for the State.*

*Daniel J. Dolan for defendant.*

STROUD, Chief Judge.

¶ 1        Devonte G. Jones ("Defendant") appeals from an amended judgment[1] entered

---

[1] The date on the amended judgment is 18 June 2019, but that date is likely an error. The original judgment was dated 18 June 2019 as well. The motion to amend the judgment— arguing the attempted first degree murder counts were imposed as class B1 / level 1 felonies when they should have been class B2 / level 1 felonies—was filed on 25 June 2019. The order on the motion to amend the judgment and a handwritten note from the judge explaining his reasoning are dated 26 June 2019. Thus, the amended judgment likely was from 26 June 2019 rather than the 18 June 2019 date on the amended judgment itself. Because Defendant has filed a petition for writ of certiorari that we grant—which highlighted this issue— the date discrepancy does not impact our analysis.

following a jury trial. The judgment included two counts of each of the following offenses: attempted first degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and discharging a weapon into occupied property resulting in serious bodily injury. Defendant argues the trial court erred in admitting testimony of a witness for the State who refreshed his recollection using a letter he had previously written because the witness used the letter as a testimonial crutch rather than a mere aid. Defendant also argues the trial court erred by admitting the letter into evidence as a prior consistent statement that corroborated the witness's testimony. Because the witness was not merely reciting from the refreshing aid and the letter was properly independently admitted as a prior consistent statement, we find no error as to the letter. In addition to the letter, Defendant argues the trial court plainly erred when instructing the jury on attempted first degree murder. Because Defendant has not shown the alleged errors probably impacted the jury verdict, we also find no error as to the jury instructions. Thus, we conclude there was no error on substantive matters in this case. However, because Defendant correctly indicates the amended judgment contains a clerical error that lists attempted first degree murder as a class B1 felony rather than class B2 felony, we remand to the trial court for correction of this error.

## I. Background

The State's evidence tended to show that on the night of 9 September and the

early morning hours of 10 September 2017, Leroy Brickhouse, his cousin Marlon Taylor, his co-worker Mike Jeffreys, and others were going out in downtown Raleigh to celebrate Taylor's upcoming birthday. During the night out, the group got into a verbal altercation with another group of people that included Defendant. Police in the area quickly intervened and broke up the altercation. About 45 minutes after the altercation, Brickhouse and Taylor returned to their cars. As Brickhouse's coworker was saying goodnight, another car came and obstructed their cars. Defendant exited the other car and began shooting with a semi-automatic rifle at the vehicle with Brickhouse and Taylor inside, as well as at the co-worker's vehicle. The co-worker returned to his vehicle and escaped. While Brickhouse drove away, Defendant continued to fire at his vehicle, and both Brickhouse and Taylor were shot. Brickhouse was shot in the chest, and Taylor was shot in the head. Defendant was arrested for the shootings and charged with two counts each—one set for Brickhouse and one set for Taylor—of: Attempted First Degree Murder, Assault with a Deadly Weapon with the Intent to Kill Inflicting Serious Injury (AWDWIKISI), Discharging a Firearm into an Occupied Vehicle Resulting in Serious Bodily Injury, Conspiracy to Commit Attempted First Degree Murder, Conspiracy to Commit AWDWIKISI, and Conspiracy to Commit Discharging a Firearm into an Occupied Vehicle Resulting in Serious Bodily Injury.

While in jail awaiting trial, Defendant shared a cell block with Ronald

Cameron. Defendant and Cameron talked about Defendant's case, and Cameron wrote a letter to the district attorney detailing their conversations. In the letter, Cameron recounted how he knew Defendant as well as that Defendant told him Defendant was involved with a shooting in Raleigh with an AK-47, Defendant had God with him or he would be facing two murder charges, and that Defendant had asked Cameron to dispose of the weapon for him if Cameron was able to get released on bond.

¶ 4     At trial, Cameron initially testified Defendant told him Defendant was charged with shooting two guys, one in the head and one in the chest, and that God was with him or Defendant would be charged with murder. At that point, Cameron initially said, "I don't think so, sir" when asked if Defendant had mentioned further details. Cameron then mentioned he had written a letter to the district attorney's office detailing his conversations with Defendant. Over Defendant's objections, including that Cameron did not "remember anything else about this" and therefore could not use the letter to refresh his recollection, the trial court allowed the State to use the letter to refresh Cameron's memory. After reading the letter, Cameron said it had refreshed his recollection "[q]uite a bit" such that he "remember[ed] the things [in the letter] from the conversation that me and him [Defendant] had." Cameron then testified he recalled Defendant had said Defendant used an AK-47 in the shooting. Following that, Cameron twice started answers by referencing that he wrote in the

letter certain information, was told not to just say what was written, and then said, "I can't say then" when asked if there was any other information that he independently remembered apart from the letter. Following that exchange, Cameron testified further about his conversations with Defendant without additional reference to the letter. The further testimony included Cameron recounting the street name—and later on cross examination a building landmark—where Defendant told him the gun used in the shooting could be found, details which were not included in the letter to the district attorney.

¶ 5    After Cameron finished testifying, the trial court found the letter was properly used to refresh Cameron's recollection. The trial court also admitted the letter itself into evidence, over Defendant's objections, on the grounds that the letter was a prior consistent statement that could be admitted to corroborate Cameron's testimony.

¶ 6    Defendant presented an alibi defense at trial. Defendant admitted he had been in the verbal altercation earlier in the night with the group that included Brickhouse and Taylor. Following the police dispersing the groups involved in the altercation, Defendant spent time searching for his cell phone after discovering it was lost. Defendant testified he then went to his sister's house and did not know any details about the shooting in downtown Raleigh until he was arrested. Defendant also specifically denied that he told Cameron that he used an AK-47 in the shooting and denied that he asked Cameron to get rid of the gun for him. Defendant's sister and

her friend also testified Defendant left Raleigh and went to his other sister's house, and the other sister testified Defendant came and slept at her house.

¶ 7        Following Defendant's case and closing arguments, the trial court instructed the jury. The trial judge primarily relied on the pattern jury instructions when crafting the instructions used in this case. He also explained to the parties that his plan was to give each instruction only once even though there were two counts of each charge, although he made clear he was "glad to hear your [the parties'] suggestions on this." Aside from asking to have language relating to an alibi defense read during the instructions on each substantive offense rather than only the first one, which the trial court rejected, Defendant did not offer any suggestions, corrections, or objections to the instructions. Defendant also did not object after the instructions were read to the jurors.

¶ 8        The jury returned verdicts finding Defendant guilty of all charges. The trial judge arrested judgment as to all six conspiracy counts and entered judgment on the remaining counts. The trial judge amended the initial judgment to correct the classification of attempted first degree murder from a Class B1 / Level One judgment to a Class B2 / Level One judgment, and Defendant was sentenced to 140 to 180 months imprisonment. However, while the first page of the amended judgment covering 17CRS221514 reflects attempted first degree murder as a class B2 felony, the last page lists the attempted first degree murder conviction in 17CRS221515 as

a class B1 felony.

¶ 9    Defendant gave oral notice of appeal following the announcement of the judgment and filed written notice of appeal following entry of the written judgment. However, Defendant did not file any additional notice of appeal following the entry of the amended judgment. *See supra* footnote 1 (explaining likely date of amended judgment, which is after written notice of appeal was filed on 25 June 2019). Defendant filed a petition for writ of certiorari "[o]ut of an abundance of caution" should we "determine that he has lost his appeal of right."

## II.    Petition for Writ of Certiorari

¶ 10    Petitions for writs of certiorari can be issued "in appropriate circumstances" to permit review of judgments "when the right to prosecute an appeal has been lost by failure to take timely action." N.C. R. App. P. 21(a)(1); *see also* N.C. Gen. Stat. § 15A-1448 (2019) (indicating the rules of appellate procedure govern issues regarding notice of appeal and petitions for writs of certiorari). In turn, an appeal in a criminal action may be taken by giving oral notice of appeal at trial or by filing a written notice of appeal within fourteen days after entry of the judgment being appealed. N.C. R. App. P. 4(a). Here, Defendant did not renew an oral notice of appeal nor file a written notice of appeal following the entry of the amended judgment, and his petition highlights that absence as the reason a writ of certiorari may be necessary.

¶ 11    To the extent a petition for writ of certiorari is necessary, we grant it in our

discretion. In *State v. Briggs*, this Court faced a similar issue where the defendant failed to give notice of appeal from an amended judgment. 249 N.C. App. 95, 97, 790 S.E.2d 671, 673 (2016). The State did not address the issue, and the defendant did not file a separate petition for a writ of certiorari, but this Court decided to treat the defendant's appellate brief as a petition and granted it. *Id.* Here, the State similarly did not file any response to Defendant's petition or raise the issue in its brief. Unlike in *Briggs*, Defendant here went further and filed a petition. As in *Briggs*, we grant the petition for a writ of certiorari to the extent it is necessary.

### III.    Issues Related to the Letter to the District Attorney

¶ 12    Defendant argues the trial court erred in admitting the testimony of Ronald Cameron, a witness for the State. Defendant contends the trial court erred in allowing Cameron to testify after reviewing a letter he had written to the district attorney with information inculpating Defendant. The trial court then also erred, Defendant argues, by admitting the letter into evidence as a prior consistent statement to corroborate the testimony Cameron had given after he reviewed the letter.

¶ 13    Specifically, Defendant relies on *State v. York*, 347 N.C. 79, 489 S.E.2d 380 (1997), to argue the trial court erred by allowing Cameron to testify while using the letter as a testimonial crutch rather than merely as a means to presently refresh Cameron's recollection. Defendant argues that by having Cameron use the letter as

a testimonial crutch, the State was able to "get the information before the jury despite Mr. Cameron's lack of knowledge as to its content." Defendant then contends the trial court "compounded" the error by admitting the letter into evidence alongside Cameron's testimony. Defendant argues this sequence of events ultimately created a situation where "[t]he prosecutor was permitted to bootstrap the evidence in through the letter and the letter in through the bootstrapped evidence." Defendant finally argues the use of the letter as a testimonial crutch and subsequent introduction of the letter into evidence prejudiced him, thereby entitling him to a new trial.

## A. Admissibility of Witness's Testimony After Refreshing Recollection

¶ 14        The letter was admitted into evidence as a prior consistent statement to corroborate Cameron's testimony, and Cameron's testimony in part came after reviewing the letter on the grounds of refreshing his recollection. Therefore, the first issue to address is whether the letter was properly used to aid Cameron's testimony by refreshing his recollection or whether it was impermissibly used as a testimonial crutch.

### 1. *Standard of Review*

¶ 15        Defendant states, and the State agrees, this issue should be reviewed *de novo*. But cases involving a witness's use of a memory aid to refresh his recollection are reviewed for abuse of discretion. *State v. Black*, 197 N.C. App. 731, 733, 678 S.E.2d

689, 691 (2009) (citing *State v. Smith*, 291 N.C. 505, 518, 231 S.E.2d 663, 672 (1977)).[2]

"An abuse of discretion results only where a decision is manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision." *Id.*, 197 N.C. App. at 733, 678 S.E.2d at 691 (citation and quotation marks omitted).

### 2. Analysis

¶ 16    In *Smith*, our Supreme Court addressed the legal rules regarding present recollection refreshed testimony.  First, *Smith* distinguished use of an item to aid a witness to refresh recollection from a writing or recording used as a past recollection recorded, which is now done pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(5) (2019). 291 N.C. at 516, 231 S.E.2d at 670.  Present recollection refreshed involves witnesses with a "sufficiently clear recollection" such that writings, memoranda or other aids "'jog[]'" their memories so that they can testify from their own recollection.  *Id.* Because the testimony comes from the witness's own independent recollection, present recollection refreshed does not involve "fixed rules but, rather, is approached on a case-by-case basis looking to the peculiar facts and circumstances present." *Id.*, 291 N.C. at 516, 231 S.E.2d at 670–71.  However, because the standards around present recollection refreshed are looser, the aid must also "actually 'refresh'" the witness's memory.  *Id.*, 291 N.C. at 517–18, 231 S.E.2d at 671.  "Where the testimony

---

[2] As *Black* explains, *York*, upon which Defendant relies, is "a later case which applied *Smith*."  197 N.C. App. at 735, 678 S.E.2d at 692.

of the witness purports to be from his refreshed memory but is *clearly* a mere recitation of the refreshing memorandum, such testimony is not admissible as present recollection refreshed and should be excluded by the trial judge." *Id.*, 291 N.C. at 518, 231 S.E.2d at 671 (emphasis in original). If there is "doubt as to whether the witness purporting to have a refreshed recollection is indeed testifying from his own recollection, the use of such testimony is dependent upon the credibility of the witness and is a question for the jury." *Id.*, 291 N.C. at 518, 231 S.E.2d at 671–72.

In *Smith*, the evidence was contradictory as to whether a transcript refreshed the witness's memory or gave her a script to recite at trial. *Id.*, 291 N.C. at 517, 231 S.E.2d at 671. At times the witness said the testimony was from her own memory, but at other times she said some of it was from her memory and some of it was not. *Id.* Because the witness did not clearly merely recite the refreshing transcript, the Supreme Court found no abuse of discretion in the trial judge's decision not to strike the testimony. *Id.*, 291 N.C. at 518, 231 S.E.2d at 671–672.

In *York*, the Supreme Court then further explained the test of admissibility of testimony based upon refreshed recollection. First, the Supreme Court explained that it would "elevate form above substance" to focus on whether a witness appears to read from a refreshing aid. *See York*, 347 N.C. at 89, 489 S.E.2d at 386 (explaining a witness appearing to read from a refreshing memorandum is not a per se violation). Rather, the reviewing court examines "whether the witness has an independent

recollection of the event and is merely using the memorandum to refresh details or whether the witness is using the memorandum as a testimonial crutch for something beyond his recall." *Id.* Using that test, the court found the notes were used to refresh recollection permissibly. *Id.* The court noted the witness testified from memory and in detail about the events surrounding the interview with the defendant, spoke in the second person—i.e. the defendant stated—throughout his testimony, and answered the prosecutor's questions independent of the notes. *Id.*

¶ 19    This Court has since applied *York* in two published opinions, *Black* and *State v. Harrison*, 218 N.C. App. 546, 721 S.E.2d 371 (2012). In *Black*, the defendant argued a witness for the State "merely parroted" the information in the transcript from his interview with police. 197 N.C. App. at 733, 678 S.E.2d at 691. This Court concluded the trial court did not abuse its discretion where the witness "testified to some of the events of the night in question before being shown the transcript . . . was equivocal about whether or not he remembered making the statements found [in the transcript]" until after hearing the audio recording of the interview, and where the witness "then testified in detail to the events of the night in question, apparently without further reference to the interview transcript." *Id.*, 197 N.C. App. at 736, 678 S.E.2d at 692. This Court ultimately concluded it was "not a case where the witness' testimony was '*clearly* a mere recitation of the refreshing memorandum.'" *Id.* (quoting *Smith*, 291 N.C. App. at 518, 231 S.E.2d at 671 (emphasis in original)).

¶ 20        In *Harrison*, the defendant argued the trial court committed plain error by allowing a witness for the State to read her prior police statement about a conversation with the defendant to the jury as a past recollection recorded, and the State argued the trial court properly admitted the testimony as present recollection refreshed. 218 N.C. App. at 548–50, 721 S.E.2d at 374–75. This Court concluded the statement was used to refresh the witness's recollection. *Id.*, 218 N.C. App. at 552, 721 S.E.2d at 376. This Court also concluded that the witness "was not using her prior statement as a testimonial crutch for something beyond her recall" because the witness "had an independent recollection of her conversation with defendant as well as of making her statement to the investigator . . . affirmed that her recollection had been refreshed . . . testified from memory, and that testimony included some details that were not contained in the statement." *Id.*

¶ 21        Here, this case is "not a case where the witness' testimony was '*clearly* a mere recitation of the refreshing memorandum.'" *Black*, 197 N.C. App. at 736, 678 S.E.2d at 692 (quoting *Smith*, 291 N.C. App. at 518, 231 S.E.2d at 671 (emphasis in original)). First, as in *Black*, Cameron testified to part of his conversation with Defendant before using the letter to refresh his recollection. *Id.* Specifically, Cameron recounted how Defendant had told him that God was with him or Defendant would be in jail for murder. Second, as in *Harrison*, Cameron had independent recollection of sending the letter to the district attorney, testifying about how he

wrote the letter before then being handed the letter. *Harrison*, 218 N.C. App. at 552, 721 S.E.2d at 376. Finally, as in *Harrison*, Cameron's testimony included some details that were not contained in the letter. *Id.* Specifically, Cameron twice, once on direct examination and once on cross examination, gave the location of the firearm down to the street where it was located and the nearby building whereas in the letter he only stated that Defendant had told him how to find the weapon. Based on these facts, it is not *clear* that Cameron merely recited the letter after it was used to refresh his recollection and as such the trial judge did not abuse his discretion in allowing Cameron to use the letter to refresh his recollection.

¶ 22    Defendant asserts several reasons we should conclude otherwise, but none of them persuade us that the trial judge abused his discretion. First, Defendant argues Cameron's testimony indicated "he had no other recollection of any alleged conversation's [sic] between him and [Defendant]" before being shown the letter to refresh his recollection. While Cameron did say he did not think Defendant had told him any more facts of the case before being shown the letter, Cameron also testified that he wrote the letter to the district attorney's office, which was an important factor in allowing the witness's testimony in *Harrison*. 218 N.C. App. at 552, 721 S.E.2d at 376. Further, a witness's lack of ability to recall additional information is the very reason the present recollection refreshed doctrine exists. *See Smith*, 291 N.C. at 516, 231 S.E.2d at 670 (recounting how the ability to recall is "subject to obvious

limitations" and present recollection refreshed evolved as a way to address the issue).

Second, Defendant notes "Mr. Cameron had talked with the prosecutor's [sic] twice before he testified. Then the prosecutor spoke with Mr. Cameron about the letter despite Mr. Cameron still being a witness." The trial judge inquired into the time when the prosecutor spoke with Cameron during a recess in the middle of his testimony. The prosecutor said he asked, "Did it refresh your recollection?" and then did not provide Cameron with any information or "coach him in any way other than ask the question." The trial judge found it was a discovery issue resolved by putting "on the record the substance of the conversation" and found that nothing further needed to be done. Given that record and the fact that no authority we have found suggests this is a relevant consideration for allowing testimony based on a refreshed recollection, we still find the trial judge did not abuse his discretion in allowing Cameron's testimony.

Third, Defendant points out that "the prosecutor asked Mr. Cameron many leading questions about things stated in the letter." The prosecutor did ask Cameron some leading questions, but Defendant's attorney did not object to the questions. Further, as Defendant points out in a footnote in his own brief, the Supreme Court has ruled that leading questions may be allowed when "aid[ing] the witness's recollection." *State v. Greene*, 285 N.C. 482, 492, 206 S.E.2d 229, 236 (1974).

Fourth, Defendant alleges evidence of error in that Cameron "gave generalized

details about a shooting" and initially testified about details "not even included in the letter." The generalized statements indicate the lack of ability to recall that present recollection refreshed aims to address. *See Smith*, 291 N.C. at 516, 231 S.E.2d at 670 (recounting the reason for present recollection refreshed doctrine). Further, as laid out above, Cameron's testimony about details not included in the letter refutes rather than supports Defendant's position because it indicates a witness did not clearly give a mere recitation of the refreshing aid. *See Harrison*, 218 N.C. App. at 552, 721 S.E.2d at 376 (finding no error in part because witness recalled events outside the refreshing aid).

Fifth, Defendant argues the Court "should also factor in the circumstances surrounding the witness in determining if the letter was used as a testimonial crutch" before pointing out "Mr. Cameron's credibility was very questionable." We first note Defendant cites no support for the proposition that we should consider the witness's circumstances in this analysis. Even if Cameron's circumstances may call his credibility into question, the credibility of the witness is a question for the jury, including the consideration of whether the witness purporting to have a refreshed recollection is testifying from such recollection. *Smith*, 291 N.C. at 518, 231 S.E.2d at 671–72.

Finally, Defendant notes "Mr. Cameron specifically tried to testify about what was written in the letter rather than from his own independent recollection. Mr.

Cameron readily acknowledged that he could not answer if there was other information that he independently remembered apart from the letter." Defendant later discusses this same point in the trial proceedings when trying to distinguish *Black*. According to Defendant, unlike the witness in *Black*, Cameron allegedly "needed to further refer to State's Exhibit 152 [the letter] in order to testify." Defendant is correct that a couple of times Cameron started answers by saying that he wrote in the letter certain information and that he responded, "I can't say then" when asked if there was any other information that he independently remembered apart from the letter. However, immediately after that statement, Cameron then said he remembered Defendant telling him an AK-47 assault rifle was used in the shooting and that his cell phone "was dropped." Additionally, before that part of the testimony, Cameron made clear the letter independently refreshed his recollection:

> Q. Now, having reviewed that letter, does that aid you in your testimony at all?
> A. Yes, it does.
> Q. Does it refresh any recollection about conversations and contents of conversations that you may or may not have had with the defendant.
> A. Quite a bit, sir.
> Q. Why does it quite a bit refresh your recollection?
> A. There are some things that I left out that after re-reading what I wrote the first time when it was fresh in my head that I put when I first put it down on paper that it brought it back.
> Q. Now that you have read it and brought it back, *does it bring it back only because you read it or do you have an independent recollection, remember those things?*

> A. *No, I remember the things from the conversation that me and him had.*

(Emphasis added.) Thus, at some times, Cameron said he was testifying from memory. In *Smith*, the court faced a similar situation where at times the witness said she was testifying from her own memory and at other times acknowledged some of the testimony was not from her memory. *Smith*, 291 N.C. at 517, 231 S.E.2d at 671. There, the court found the trial judge did not abuse his discretion in allowing the testimony because the witness did not clearly provide a mere recitation of the refreshing memorandum. *Id.*, 291 N.C. at 518, 231 S.E.2d at 671–72. Likewise here, it is not *clear* Cameron was merely reciting the letter at trial or using it as a testimonial crutch, so we find that the trial judge's decision to allow the testimony does not amount to an abuse of discretion.

## B. Admissibility of the Letter

¶ 28    Having concluded the letter was properly used to refresh Cameron's recollection, we now turn to the second issue Defendant raises in relation to the letter, whether it was error to admit the letter into evidence.

### 1. *Standard of Review*

¶ 29    "When preserved by an objection, a trial court's decision with regard to the admission of evidence alleged to be hearsay is reviewed *de novo*." *State v. Johnson*, 209 N.C. App. 682, 692, 706 S.E.2d 790, 797 (2011). Here, Defendant objected that

the letter was an out-of-court statement—and therefore inadmissible hearsay—when the State made a motion to get a ruling on the letter's admissibility outside of the presence of the jury and later renewed his objection when the State moved in front of the jury to admit the letter. Therefore, we review *de novo* the admission of the letter into evidence.

### 2. Analysis

¶ 30      "[A] writing used to refresh recollection is not admissible because it was used to refresh the witness's recollection, but it may be admissible for independent reasons." *Harrison*, 218 N.C. App. at 551, 721 S.E.2d at 375; *see also State v. Spinks*, 136 N.C. App. 153, 160, 523 S.E.2d 129, 134 (1999) ("The use of a document in order to refresh a witness' recollection does not make it admissible if offered by the party calling the witness, although it may be admissible for other reasons."). Thus, the question is whether there was an independent basis to admit the letter into evidence.

¶ 31      In admitting the letter into evidence, the trial court made clear the independent basis upon which its ruling relied. Specifically, the trial court found the letter was admissible as a "prior consistent statement[] to corroborate the person's testimony." The trial court made this ruling over the objections of Defendant that the letter was not a prior recorded recollection under North Carolina General Statute § 8C-1, Rule 803(5) (2019) and was an out of court statement to the extent it was used to refresh Cameron's recollection. As the trial court's ruling already contains a

potential independent ground of admission, we rely on that potential ground. Thus, the question is whether the trial court erred in ruling the letter was admissible as a prior consistent statement.

¶ 32        Admission of prior consistent statements is "[o]ne of the most widely used and well-recognized methods of strengthening the credibility of a witness." *State v. Locklear*, 320 N.C. 754, 761–62, 360 S.E.2d 682, 686 (1987). The idea behind the method "rests upon the obvious principle that, as conflicting statements impair, so uniform and consistent statements sustain and strengthen [the witness'] credit before the jury." *State v. Levan*, 326 N.C. 155, 167, 388 S.E.2d 429, 435 (1990) (quoting *Jones v. Jones*, 80 N.C. 246, 249 (1879)) (alteration in original).

¶ 33        Prior consistent statements are admissible because they are "not offered for their substantive truth and consequently [are] not hearsay." *Id.* "To be admissible, the prior consistent statement must first [ ] corroborate the testimony of the witness." *State v. Lee*, 348 N.C. 474, 484, 501 S.E.2d 334, 341 (1998). Corroborating statements "strengthen" and "add weight or credibility to a thing by additional and confirming facts or evidence." *Levan*, 326 N.C. at 166, 388 S.E.2d at 435 (internal quotations omitted). Still, the statements offered as prior consistent statements need not align precisely with the testimony of the witness whose credibility will be strengthened. The prior statement "may contain new or additional information when it tends to strengthen and add credibility to the testimony which it corroborates." *State v. Ligon*,

332 N.C. 224, 237, 420 S.E2d 136, 143 (1992) (internal quotations omitted); *see also Locklear*, 320 N.C. at 762, 360 S.E.2d at 686 ("If previous statements offered in corroboration are generally consistent with the witness' testimony, slight variations between them will not render the statements inadmissible."). But a past statement that "actually directly contradict[s] . . . sworn testimony" is not admissible as a prior consistent statement. *State v. McDowell*, 329 N.C. 363, 384, 407 S.E.2d 200, 212 (1991) (quoting *State v. Burton*, 322 N.C. 447, 451, 368 S.E.2d 630, 632 (1988)) (ellipses in original).

¶ 34         The letter at issue here qualifies as a prior consistent statement under those standards. The letter corroborates Cameron's testimony both as to how he came to have the information about Defendant's crime as well as the information about Defendant's crime to which Cameron testified. The letter reinforces Cameron's testimony that he knew Defendant as "Jones" or "Rage" and that they shared a cell block together. Further, the letter corroborates Cameron's testimony regarding the location of the shooting on Glenwood Avenue, that Defendant used an AK-47 in the shooting, that Defendant lost his cell phone at the scene of the shooting, and that Defendant told Cameron God was with Defendant or he would be facing a murder charge. The letter is thus exactly the type of confirming evidence that defines corroboration. *Levan*, 326 N.C. at 166, 388 S.E.2d at 435.

¶ 35         Cameron's testimony only diverged from the letter on one occasion, and that

instance does not undermine the letter's status as a prior consistent statement. In the letter, Cameron wrote that Defendant's co-defendant was "his sister [sic] baby daddy." (Capitalization altered.) At trial, Cameron initially testified Defendant said his co-defendant was "his baby mama's brother or something like that" before admitting on cross, "I don't remember exactly." Cameron's testimony indicates he failed to remember something he wrote in the letter. Since the letter did not "actually directly contradict[]" Cameron's testimony, this difference does not undermine the letter's status as a prior consistent statement. *See McDowell*, 329 N.C. at 384, 407 S.E.2d at 212 (explaining an actual direct contradiction prevents evidence from being a prior consistent statement) (internal quotations omitted).

¶ 36 Defendant's own prior challenge to Cameron's use of the letter to refresh his recollection reinforces how the letter is a prior consistent statement. Defendant argues on the refreshed recollection issue that the State was able to "get the information before the jury despite Mr. Cameron's lack of knowledge as to its content." In other words, Defendant argues Cameron only testified to the contents of the letter itself because he did not remember anything independently of the letter. While above we found Cameron independently recalled the conversations to which he testified, that ruling does not change the similarity between Cameron's testimony and the letter that Defendant highlights. That parallel between the testimony and letter makes the letter a prior consistent statement. *See Levan*, 326 N.C. at 166, 388

S.E.2d at 435 (defining corroboration to include "confirming facts or evidence" (internal quotations omitted)).

¶ 37    Defendant makes two arguments as to why we should conclude the letter is not a prior consistent statement, but neither argument persuades us. First, Defendant argues "the jury was not provided with a limiting instruction that State's Exhibit 152 [the letter] was only to be used for corroborative purposes." However, Defendant did not request a limiting instruction when the letter was introduced into evidence. By failing to request the instruction, Defendant waived the issue on appeal. *State v. Joyce*, 97 N.C. App. 464, 469–70, 389 S.E.2d 136, 140 (1990) (ruling the defendant waived his argument about the lack of limiting instruction as to a statement "for the purpose of corroborating" the out-of-court declarant's in-court testimony because the defendant failed to request such instruction). Additionally, the trial court gave a general jury instruction about "Impeachment or Corroboration by Prior Statement" that made clear the prior statement could only be used for corroborative purposes. (Capitalization altered.)

¶ 38    Second, Defendant notes the "prosecutor did not provide the same rationale for admission" as the trial court, i.e. that the letter was admissible as a prior consistent statement. While the prosecutor did not use the words prior consistent statement, his explanation to the trial court made clear that was the basis. In relevant part, the discussion occurred as follows:

> THE COURT: This is -- it was used to do refresh his recollection. It's not a memorandum of a matter which a witness once had knowledge, but now has insufficient recollection.
>
> This was used to refresh his recollection and *it's being offered as a prior consistent statement is my understanding.*
>
> So, Mr. Latour.
>
> MR. LATOUR: In part, that is why it was used then. *Now I am introducing it as the letter that he wrote that was testified about* and that the defendant, through his attorney, asked very specific questions about things that were written in that letter, and therefore I would say it opens the door for that.
>
> The letter has been authenticated ad nauseam by him that it is something that he wrote. Now whether the contents of it -- I would submit to you none of the contents of it are hearsay and would therefore fall under none of those issues that the defendant is objecting about it being admitted under.

(Emphasis added.) Two parts of this discussion are especially relevant. First, the attorney for the State indicated he was introducing the letter in part based on the fact that Cameron testified about it. Second, the trial judge did not offer the prior consistent statement rationale to the State, rather he believed that is why the State itself had offered the letter into evidence. This distinction makes clear the prior consistent statement reasoning originated with the State rather than the trial court.

¶ 39     Having rejected Defendant's counter arguments, we conclude after *de novo* review that the letter was admissible as a prior consistent statement. Therefore, we conclude the trial court did not err on either issue related to the letter.

## IV.    Jury Instructions

In addition to the arguments related to the letter, Defendant also argues the trial court plainly erred when instructing the jury on attempted first degree murder. Specifically, Defendant first argues the trial court plainly erred when, rather than using the pattern jury instruction for attempted first degree murder, it "fashioned its own instruction[s]" combining the pattern jury instructions on general attempt and on first degree murder. Defendant also contends the trial court should have included the elements of attempted first degree murder in the final mandates. Finally, Defendant asserts plain error on the basis that the trial court only provided instructions on the first count of attempted first degree murder and did not repeat the instructions for the second count. Defendant then argues the erroneous instructions "resulted in fundamental error that had a probable impact on the jury's verdict" because there was not "overwhelming evidence of guilt" in this case, thereby addressing the prejudice prong of plain error. As a result, Defendant asserts he is entitled to a new trial.

### A. Standard of Review

Defendant admits he did not object to the allegedly erroneous jury instructions at trial and therefore argues plain error should apply. While the State also says plain error should apply, it argues in a footnote that in the past this would have been invited error under *State v. White*, 349 N.C. 535, 508 S.E.2d 253 (1998). The State

contends this standard was only recently modified by this Court in *State v. Chavez*, 270 N.C. App. 748, 842 S.E.2d 128 (2020). As the State notes, the North Carolina Supreme Court reviewed *Chavez*. *State v. Chavez*, 2021-NCSC-86. While the Supreme Court did not address the invited error versus plain error issue directly, it applied plain error review in a case where the defendant did not object to an allegedly erroneous jury instruction on conspiracy to commit murder. *Id.* ¶¶ 10–11. Based on that ruling and the fact that plain error review typically applies to instructional error, we will apply plain error review, rather than review for invited error.[3] *State v. Lawrence*, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012).

¶ 42 In the definitive case on plain error, our Supreme Court explained:

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]

*Id.*, 365 N.C. at 518, 723 S.E.2d at 334 (internal quotations, citations, and alterations omitted). Put another way, if a defendant cannot show the alleged error prejudiced

---

[3] The standard of review also does not impact our decision because regardless, as explained below, Defendant cannot show prejudice.

him, he cannot meet the plain error standard. *See id.*, 365 N.C. at 518–19, 723 S.E.2d at 334–35 (finding the defendant failed to meet his burden to show plain error when he could not show the jury probably would have reached a different verdict even when the erroneous nature of the jury instruction was "uncontested"); *see also State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) ("The adoption of the 'plain error' rule does not mean that every failure to give a proper instruction mandates reversal regardless of the defendant's failure to object at trial.").

**B. Analysis**

¶ 43        Defendant asserts plain error as to the trial court's jury instructions on attempted first degree murder. First, Defendant argues the trial court plainly erred when it "did not provide any substantive instruction as to the second count of attempted first degree murder" but rather "merely told the jury that it had previously provided the instruction and they applied there as well." Defendant does not explain how repeating the same instruction he alleges was erroneous would have helped the jury. Further, the trial court allowed the jury to take the written instructions to the jury room during deliberation, so if they needed to review the instructions again, they could have read them rather than hear them for a second time. Finally, Defendant cites no authority requiring repeating the same jury instruction twice when a defendant faces multiple counts. For those reasons, it is not clear the trial court erred, let alone plainly erred, with respect to not giving the attempted first degree

murder instructions again for the second count.

¶ 44        Defendant's main argument centers on a dispute over the use of the general attempt and first degree murder pattern jury instructions, N.C.P.I. – Criminal 201.10 (2011) (general attempt charge) and 206.10 (2019) (first degree murder), rather than the pattern jury instruction specifically on attempted first degree murder, N.C.P.I. – Criminal 206.17A (2003).  Defendant at one point even argues the trial court used its "own instructions," implying the pattern instructions were not used at all.  The State asserts the trial court's instructions "reveal adherence to the 2019 supplement" to the North Carolina pattern jury instructions on first degree murder, which was then combined with the general attempt charge.[4]  The conflict centers on pattern jury instructions because the Supreme Court has "encouraged" using them, although it is not required.  *State v. Haire*, 205 N.C. App. 436, 441, 697 S.E.2d 396, 400 (2010) (citing *State v. Morgan*, 359 N.C. 131, 169, 604 S.E.2d 886, 909 (2004)).

¶ 45        For clarity, we briefly review how the jury instructions in this case relate to those pattern jury instructions.  Except for the sentence discussed below, the State is correct that the trial court's instructions follow the pattern jury instructions in N.C.P.I – Criminal 201.10 and 206.10 as those appeared at the time of Defendant's

---

[4] Footnote 2 in the State's brief cites to N.C.P.I – Criminal 206.17.  This citation appears to be a clerical error given the State cited to 206.10, which is the correct cite, in the main text of its brief.

trial, with relevant additions on subjects such as alibi and acting in concert.

¶ 46      We further note that the instructions given conform in large part to the instruction which Defendant now claims was legally required, N.C.P.I. – Criminal 206.17A (2003). Specifically, the jury instructions given at Defendant's trial track the instructions in 206.17A in language—except as to the sentence discussed below—as to both elements of attempted murder and as to the definitions of malice, premeditation, and deliberation within the definition of first degree murder. The order of the instructions slightly differs—with the definition of first degree murder coming immediately after the first element (intent to commit first degree murder) in the instructions at trial rather than after both elements—and the definition of first degree murder at trial added instructions on the definitions of proximate cause and intent. The other difference between the instructions given based on 201.10 and 206.10 versus Defendant's preferred instruction on appeal, 206.17A, is the final mandate. The instructions at trial used language about whether Defendant "intended to commit first degree murder" rather than including language that Defendant "attempted to kill the victim" while acting "with malice, with premeditation and with deliberation," a difference about which Defendant separately claims error.

¶ 47      The major difference in the instructions as given and the pattern jury instructions, both the trial court's combination of 201.10 with 206.10 and Defendant's

preferred 206.17A, is part of a sentence in the definition of malice. Both 206.10 and 206.17A define "malice" in relevant part as "the condition of mind which prompts a person to [intentionally] take the life of another [intentionally] or *to intentionally inflict serious bodily harm* that[/which] proximately results in another person's[/his] death without just cause, excuse[,] or justification." N.C.P.I. – Criminal 206.10 (2019), 206.17A (2003) (emphasis added) (alteration to reflect difference between 206.10 and 206.17A with intentionally appearing in the first spot in 206.10 and in the second spot in 206.17A). By contrast, the jury instructions in relevant part defined malice as "that condition of mind which prompts a person to take the life of another intentionally or *to intentionally inflict a wound with a deadly weapon upon another* which proximately results in his death, without just cause, excuse or justification." (Emphasis added.)

¶ 48        As Defendant indicates, a wound is not the same as serious bodily harm. Defendant relies on case law defining wound as "an injury to the person by which the skin is broken," *State v. Butts*, 92 N.C. 784, 786 (1885), and serious bodily harm as "such physical injury as causes great pain or suffering." *See State v. Bonilla*, 209 N.C. App. 576, 585, 706 S.E.2d 288, 295 (2011) (so defining while equating serious bodily harm and serious bodily injury). Further, as Defendant highlights, the statutory definition of serious bodily injury in the context of assault requires "substantial risk of death," "serious permanent" harm, or harm that "results in prolonged

hospitalization." N.C. Gen. Stat. § 14-32.4(a) (2019). These definitions from statute and case law align with the general legal definitions of the words. *See generally Wounding* and *Serious Bodily Harm*, Black's Law Dictionary (11th ed. 2019).

¶ 49        While the language in that sentence differed, the trial court, in accordance with the pattern jury instructions, then instructed the jury it could infer malice if the State proved beyond a reasonable doubt that Defendant "intentionally inflicted a wound upon the deceased[/victim] with a deadly weapon" that proximately caused the victim's death. N.C.P.I. – Criminal 206.10 (2019), 206.17A (2003) (alteration to demonstrate difference between the two versions of the pattern jury instructions). To the extent this unchallenged part of the pattern jury instructions is in accordance with the law—which we do not address—the difference in language above may not even be error. If intentionally inflicting a wound can lead to an inference of malice, then defining malice to include such an action may not be error.

¶ 50        Regardless, we need not reach a firm conclusion on whether the instruction was an error because assuming arguendo the trial court erred, it was not a plain error; Defendant cannot show prejudice. *See State v. Mumma*, 372 N.C. 226, 241, 827 S.E.2d 288, 298 (2019) (stating the court "need not decide" whether an instruction was improper when the defendant could not show prejudice (internal quotations omitted)); *see also State v. Turner*, 237 N.C. App. 388, 392, 765 S.E.2d 77, 82 (2014) (assuming arguendo instructional error before finding no plain error due to lack of

prejudice). To find prejudice a court must conclude that "after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (internal quotations and citations omitted). Here, absent the alleged instructional errors as to the attempted first degree murder charges, Defendant cannot show the jury probably would have reached a different verdict.

¶ 51        First, the jury found the necessary elements as to the other charges for which Defendant does not challenge the jury instructions. Even under Defendant's preferred instruction, N.C.P.I – Criminal 206.17A, malice includes "the condition of mind which prompts a person to take the life of another intentionally," i.e. the intent to kill. The jury separately convicted Defendant of two counts of "assault with a deadly weapon *with intent to kill* inflicting serious injury." (Capitalization altered; emphasis added.) This charge was based on the same action, shooting at Taylor and Brickhouse, as the attempted first degree murder charge, so the jury would have found intent to kill and thus malice even with Defendant's requested jury instruction or any jury instruction that was not erroneous.

¶ 52        Faced with a similar situation in *State v. Allen*, this Court likewise found the defendant could not show prejudice and therefore did not carry his plain error burden. 233 N.C. App. 507, 515, 756 S.E.2d 852, 860 (2014). In that case, the defendant claimed plain error in failing to instruct the jury on self-defense on the charge of

discharging a firearm into an occupied vehicle. *Id.*, 233 N.C. App. at 514, 756 S.E.2d at 859. This Court rejected that argument, ruling it was "unlikely that the jury would have reached a different result" if the jury had been instructed on self-defense as to the discharging a firearm charge because the jury had also convicted defendant on attempted first-degree murder and assault even though the trial court gave a self-defense instruction on each of those charges. *Id.*, 233 N.C. App. at 515, 756 S.E.2d at 860. Here, if the jury had been properly instructed as to malice on the attempted first degree murder charge, the jury probably would not have reached a different result because the jury had also convicted Defendant on the assault charge, which, like malice, required finding intent to kill.

¶ 53        Looking to "the crux of the defense" at trial, we again find Defendant cannot demonstrate prejudice. *See State v. Oliphant*, 228 N.C. App. 692, 702, 747 S.E.2d 117, 124 (2013) (finding no prejudice where defendants argued misidentification of both defendants at trial and then made plain error arguments on appeal claiming the jury instructions failed to make clear the guilt or innocence of one defendant was not dependent upon that of the other). Here, Defendant presented an alibi defense at trial. Yet, his plain error arguments focus on whether the jury was properly instructed on malice for the attempted first degree murder charge. The issues do not align because the jury still could have convicted Defendant even if they had received the malice instructions Defendant claims should have been given. At trial, Defendant

did not argue he lacked malice but rather that he was not involved at all. Put another way, in convicting Defendant of other charges tied to the shooting the jury rejected Defendant's alibi defense, and even with different instructions on malice, they would have rejected the defense as to attempted first degree murder as well. Thus, Defendant again fails to carry his burden to show the alleged instructional "error had a probable impact on the jury's finding that the defendant was guilty." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (internal quotations and citations omitted).

¶ 54     Defendant's prejudice argument does not convince us otherwise. Defendant argues the allegedly erroneous instructions "had a probable impact on the jury's verdict" because "[t]his is not a case where there was overwhelming evidence of guilt." Overwhelming evidence of guilt can defeat a plain error claim on prejudice grounds. *See id.*, 365 N.C. at 519, 723 S.E.2d at 335 ("In light of the overwhelming and uncontroverted evidence, defendant cannot show that, absent the error, the jury probably would have returned a different verdict."). But the inverse, which Defendant argues, is not true. The "lack of overwhelming and uncontroverted evidence against defendant" does not require "the conclusion that a jury probably would have reached a different result." *State v. Maddux*, 371 N.C. 558, 565, 819 S.E.2d 367, 372 (2018). Thus, even though this case was close, we can still find no prejudice for the reasons laid out above.

¶ 55     Finally, we quickly note an issue with the State's view of prejudice. The State

argued Defendant was satisfied with the jury instructions and thus "[u]nder these circumstances, even had the trial court erred, there should can [sic] be no conclusion that the error" resulted in prejudice. The State's argument amounts to an attempt to create invited error by claiming if Defendant did not object to the instructions, there can be no prejudice ever and thus no plain error. We have already concluded plain error is the appropriate standard here. We will not undermine that standard by concluding there can be no prejudice whenever a defendant fails to object to jury instructions and thus must resort to plain error review on appeal. We find no plain error based upon the totality of the jury instructions and the facts of this particular case.

¶ 56    Because we conclude Defendant cannot demonstrate prejudice as to any of the alleged instructional errors, we find that the trial court did not plainly err when instructing the jury on attempted first degree murder.

## V.    Clerical Error

¶ 57    Defendant finally argues the case should be remanded for correction of clerical errors. Specifically, Defendant contends attempted first degree murder is a class B2 felony, but part of the amended judgment lists it as a class B1 felony. To the extent a clerical error exists, the State agrees that the case should be remanded to correct it.

¶ 58        "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth." *State v. Smith*, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696 (2008) (internal quotations and citations omitted). A clerical error is "an error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination." *Id.* (internal quotations and citations omitted). The Supreme Court has previously recognized that erroneously assigning the wrong class of felony to a crime is a clerical error. *State v. Hammond*, 307 N.C. 662, 669, 300 S.E.2d 361, 365 (1983).

¶ 59        Here, Defendant correctly states attempted first degree murder is a class B2 felony. *See* N.C. Gen. Stat. § 14-17 (stating first degree murder is a class A felony) and § 14-2.5 (stating an attempt to commit a class A felony is a class B2 felony). Defendant is also correct that the last page of the amended judgment, listing "Additional File No.(s) and Offense(s)" lists the attempted first degree murder conviction in 17CRS221515 as a class B1 felony. (Capitalization altered.) This error happened even though the trial judge in a signed order pursuant to a handwritten note indicated he was amending the original judgment to properly reflect attempted first degree murder as a class B2 felony. Further, the first page of the amended judgment lists the conviction in 17CRS221514 as a class B2 felony. These facts indicate the listing of attempted first degree murder as a class B1 felony in the

amended judgment is a clerical error, not an error based on judicial reasoning or determination. *Smith*, 188 N.C. App. at 845, 656 S.E.2d at 696. Therefore, we remand to the trial court for correction of this error.

## VI. Conclusion

We find no error as to the substantive issues raised by Defendant. We conclude the trial court did not abuse its discretion in ruling the letter refreshed the witness's testimony. Further, we find after *de novo* review that the letter itself was admissible. We also do not find plain error with regard to the jury instructions on attempted first degree murder.

However, we find the amended judgment contains a clerical error incorrectly listing the attempted first degree murder conviction in 17CRS221515 as a class B1 felony. We remand to the trial court for correction of this error. On remand, the trial court shall amend the judgment to correctly reflect that attempted first degree murder is a class B2 felony.

NO ERROR AND REMANDED.

Judges DIETZ and CARPENTER concur.